## UNITED STATES of America, Plaintiff–Appellant,

v.

## Roosevelt MATTHEWS, Defendant–Appellee.

### No. 94–1123.

United States Court of Appeals, Seventh Circuit.

Argued June 9, 1994.

Decided Aug. 10, 1994.

Rehearing Denied Sept. 7, 1994.

Thomas Edward Leggans (argued), W. Charles Grace, Office of the U.S. Atty., Fairview Heights, IL, Michael C. Carr, Asst. U.S. Atty., Benton, IL, for plaintiff-appellant.

Daniel R. Schattnik (argued), Unsell, Unsell & Schattnik, East Alton, IL, for defendant-appellee.

Before CUMMINGS, ESCHBACH and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

On August 10, 1993, a grand jury returned a five-count indictment against Roosevelt Matthews. Mr. Matthews was charged on the following counts: (Count 1) knowingly transferring a modified rifle in violation of 26 U.S.C. § 5861(e); (Count 2) knowingly possessing an unlawfully manufactured firearm in violation of 26 U.S.C. §§ 5822, 5861(c), and 5871; (Count 3) knowingly possessing an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871; (Count 4) knowingly possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924; and (Count 5) using or carrying a firearm during and in relation to the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c).

Mr. Matthews filed a motion to suppress evidence relating to Counts 2, 3, and 4. The district court granted Mr. Matthews' motion.

The government filed a motion to reconsider which the district court denied. The government now appeals this ruling; for the reasons that follow, we reverse.

## I

## BACKGROUND

### A. *Facts*

On July 17, 1993, Vaughn Grace entered the Cairo, Illinois, police station and told the officers present that someone in an old tan Chevrolet had tried to run him down. He explained that a passenger in the car had jumped from the car, thrown him to the ground, robbed him, returned to the vehicle, and driven off. Grace told the officers that he chased the car thirteen blocks. The car, according to Grace, then stopped at an apartment complex, and he saw the robber enter one of the apartments.

The police accompanied Grace to the apartment. He identified a tan car near the apartment as the one that nearly had run him down. A computer check on the license plate revealed that the car was registered to Roosevelt Matthews. Shortly thereafter, Mr. Matthews stepped out of the apartment and Grace identified him as his attacker. The officers then arrested Mr. Matthews and advised him of his *Miranda* rights. They also seized his automobile on the ground that it was an instrumentality of the alleged robbery and might contain Grace's wallet or other evidence relating to the robbery. The officers then returned to the station house with Grace and Mr. Matthews.

At the station house, the officers questioned in more detail both Grace and Mr. Matthews. An officer again advised Mr. Matthews of his Miranda rights. As the interviews progressed, the officers came to doubt Grace's version of the robbery. Eventually, the officers concluded that Grace was lying about several important matters and decided to release Mr. Matthews. They told Mr. Matthews that he was free to go and that he could have his car as soon as the officers finished a routine inventory of its contents. Mr. Matthews informed Officer Connie Martin that there was something in the trunk that he had to retrieve. Officer Martin inquired about the nature of the item; Mr. Matthews informed her that he had found a sawed-off shotgun a few days earlier and that he had put it in his trunk. Officer Martin informed Sgt. James McKenna, the supervising officer, about the weapon. Mr. Matthews then went to the impoundment lot where his car was being held. Three officers participated in the inventory: Sgt. McKenna, Officer Martin, and Officer Kirk Snelson. During the inventory, the weapon was uncovered.

### B. *District Court Proceedings*

The defendant filed a motion to suppress the shotgun at issue in Counts 2, 3, and 4. In its response, the government argued that the "automobile exception" to the warrant requirement justified the warrantless search of Mr. Matthews' car. At the suppression hearing, Mr. Matthews called three witnesses who testified to the events immediately preceding and during the inventory. Officer Martin testified that, after Mr. Matthews was informed that he was free to go, she advised him that his vehicle was going to be inventoried pursuant to department policy. He then informed her that there was something in the car that he needed to give to his nephew. Officer Martin asked whether Mr. Matthews could tell her the nature of the item. According to Officer Martin, after she inquired a second time, he said, " 'I'll tell you what it is, I found a sawed-off shotgun in the weeds yesterday.' " Hearing Tr. 77. She advised Sgt. McKenna of Mr. Matthews' disclosure, but never made a police report on the matter because, she stated, "[i]t kind of slipped my memory a little bit." *Id.* at 78. Sgt. McKenna's report also failed to mention Officer Martin's conversation with Mr. Matthews. It only indicated that Mr. Matthews advised him of the presence of a shotgun in the trunk at the moment that the vehicle's trunk first was opened.

Officer Snelson testified to the events that transpired after Mr. Matthews left the station house. Officer Snelson stated that Mr. Matthews was waiting at the impoundment lot when he arrived to conduct the inventory. Officer Snelson testified that he searched the

interior of the vehicle, but that he was not the person who opened and searched the trunk; instead, he testified that Sgt. McKenna opened the trunk and removed some items. *Id.* at 25. Sgt. McKenna, however, testified that Officer Snelson was the one who performed the entire search; he stated, however, that he did assist Officer Snelson in the inventory of the trunk. *Id.* at 54. Officer Snelson and Sgt. McKenna described themselves as the only participants in this search. Officer Martin, on the other hand, said she searched the interior of the vehicle while Officer Snelson and Sgt. McKenna searched the trunk. *Id.* at 80.

The officers also testified to the existence of an inventory policy. Officer Snelson testified that conducting an inventory after a car is towed is "policy." *Id.* at 22. The purpose of this policy, he continued, was to protect the department from claims of missing property. Officer Snelson also testified that this was a written policy; however, when asked, he could not locate it in the department's procedure manual. Sgt. McKenna also testified that the department "had the policy of inventorying the vehicles.... for our protection." *Id.* at 64–65. Officer Martin was the only officer to describe the inventory and did so by way of comparison: "A search we are looking for a particular item. Inventory, we inventory everything in the particular car once we impound a vehicle." *Id.* at 83.

At the close of evidence, counsel for Mr. Matthews made several arguments. First, he maintained the initial seizure of the vehicle was wrongful because the officers lacked probable cause. Additionally, he argued that there was no policy of inventorying vehicles and therefore the search could not be justified under that exception. Finally, counsel argued that any statements made by the defendant after the officers announced they would conduct the inventory search were tainted. Although the government in its memorandum had justified the search under the automobile exception, it argued at the hearing that the "inventory search" exception to the warrant requirement justified the search.

At the close of the hearing, the court ordered the evidence suppressed. It based its decision on its belief that the police did not have the authority to conduct an inventory search of a car after its owner was released from custody. The court supplemented its ruling from the bench with a written order issued on December 2, 1993. In it, the court concluded that the police officers had probable cause to arrest and to detain Mr. Matthews for investigation of an alleged robbery. The court further determined that Mr. Matthews' "vehicle was properly towed and impounded as being suspected evidence in an alleged robbery." R.30 at 9. In addition, the court made findings that the officers released Mr. Matthews from custody and told him they were going to inventory his car; Mr. Matthews then told the officers he had a sawed-off shotgun in the trunk of his car. In addition, the court found that the department did not have a written policy for inventorying vehicles. In this regard, the court stated that "the testimony of the officers as it relates to what occurred at [the impoundment lot], coupled with the police reports of Sergeant McKenna, conflict and contradict each other to the point that this Court questions the reliability of their testimony when compared to each other and the police reports...." *Id.* at 10.

The district court rejected the government's argument that the automobile exception to the warrant requirement justified the warrantless search of the defendant's car.

> The Court will first dispose of the argument that the automobile exception should apply in this instance. Under the automobile exception to the warrant requirement, a car may be searched without a warrant if there is probable cause to believe that it contains contraband or evidence and exigent circumstances are present. *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir.1992).... The inherent mobility of a vehicle supplies sufficient exigency to justify employing the automobile exception.

*Id.* at 11.

The district court then addressed the inventory exception. The court recognized the validity of the inventory exception to the warrant requirement. It also noted the three-fold purpose behind the inventory exception: (1) protection of the owner's proper-

ty while it is in police custody; (2) protection of the police against claims of lost or stolen property; and (3) protection of the police from potential danger. R.30 at 13–14. The court ruled, however, that the inventory exception was inapplicable in this case because (1) the department did not have a standardized inventory procedure; (2) the recognition of the inventory exception in this case would not advance the three-fold rationale behind the inventory exception; and (3) the search at issue did not meet the requirement that an inventory search "be a purely administrative task and not for the purpose of extracting evidence from the vehicle." *Id.* at 14.

On December 8, 1993, the government filed a motion asking the district court to reconsider its December 2, 1993 ruling. The court denied the motion on January 4, 1994. In its order, the court first ruled that the government had waived the argument that the department had an unwritten standardized inventory policy. "At no time during the hearing did the government argue, or any of the officers testify, as to the existence and parameters of an unwritten official departmental policy regarding inventory searches." R.36 at 3. However, the court did not end its analysis there. It continued:

> Furthermore, in the findings of fact of the Court's written order, this court specifically found that the testimony of the officers was not credible as to the events surrounding the "inventory" of the defendant's vehicle. Based upon this finding, there was no credible evidence presented to this court regarding the existence of any policy, written or unwritten, regarding inventory searches.

*Id.* at 3–4. Finally, it reiterated its earlier ruling that the automobile exception did not apply to the facts of this case because the automobile had lost its mobility. The court stated:

> Under the facts of this case, this Court indicated at the hearing and reaffirms now, that the automobile warrantless search exception does not and would not apply to the facts of this case even though the officers had knowledge that the defendant's vehicle contained a weapon, knowing that individual was a convicted felon. The

vehicle had lost its mobility, the defendant had no access to it, and the automobile was under the total physical possession of the Cairo Police Department.

*Id.* at 4.

The government now appeals.

## II

## DISCUSSION

On appeal, the government maintains that the district court erred in suppressing the evidence for two reasons. First, it contends that the search was a valid inventory. Second, it argues that the search fell within the automobile exception to the warrant requirement. We review the district court's rulings on these issues only for clear error. *See United States v. McCarthur,* 6 F.3d 1270, 1275 (7th Cir.1993). We evaluate each contention in turn.

### A. *The Inventory Exception*

■ The government first submits that the district court erred in requiring the police department to have a written policy. The government challenged this ruling in its motion to reconsider and cited cases that illustrate that a written policy is not necessary for the exception to apply. The district court acknowledged these cases; it then ruled, however, that the government had waived the argument that its policy was unwritten because it had relied on the existence of a written policy at the hearing. More importantly, it stated that it found the officers' testimony completely incredible with regard to the inventory.

Three officers testified to the existence of a departmental policy. Officer Snelson stated that there was a written policy, but that he was not able to locate it. Sgt. McKenna and Officer Martin testified to the existence of a policy, but did not specify whether the policy was written or unwritten. The scope of this policy was not explored at the hearing; nor did the government elicit testimony regarding how often the policy was invoked or how the policy was administered, i.e., how an inventory was conducted. The district court concluded that the contradictions

among the statements of the different officers, and between their testimony and the police reports, rendered all the testimony unreliable. Consequently, the court concluded that there was "no credible evidence presented to this court regarding the existence of any policy, written or unwritten." R.36 at 4.

"The factfinder actually hearing the testimony of witnesses is best situated to determine their credibility." *United States v. Scott,* 19 F.3d 1238, 1242 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 163, —— L.Ed.2d —— (1994). Because we review a motion to suppress only for clear error, and because "[t]his standard is especially deferential to the credibility determinations of a district judge who has conducted a suppression hearing," *United States v. Springs,* 17 F.3d 192, 194 (7th Cir.1994), we shall not disturb the district court's findings. Consequently, the suppression order will not be reversed on this basis.

### B. *The Automobile Exception*

■ The government also submits that the automobile exception to the warrant requirement applies. "Under the 'automobile exception' to the warrant requirement, a car may be searched without a warrant if there is probable cause to believe that the car contains contraband or evidence." *United States v. McGuire,* 957 F.2d 310, 314 (7th Cir.1992). In this case, the district court determined that the officers "had probable cause to believe that they would find contraband in [Mr. Matthews'] car." R.36 at 5.[1] However, the district court held that the automobile exception did not apply because, at the time of the search, the automobile had lost its mobility.

In its early holdings, the Supreme Court identified an automobile's inherent mobility as the justification for allowing warrantless searches of automobiles on probable cause:

> We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). Our early cases therefore took the same approach. For example, in *United States v. Henry,* 259 F.2d 725, 727 (7th Cir.1958), *rev'd on other grounds,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), we wrote that "a lawful search of a car moving on a public thoroughfare may be had without a warrant providing probable cause for the search exists." More recently, however, the Supreme Court has grounded the rationale for this exception on another basis as well:

> [A]lthough ready mobility alone was perhaps the original justification for the vehicle exception, our later cases have made clear that ready mobility is not the only basis for the exception. The reasons for

---

1. Mr. Matthews' counsel at the suppression hearing argued that probable cause to search Mr. Matthews' car was lacking. He maintained that any statements made by Mr. Matthews that gave the officers probable cause to search the vehicle were tainted because they were prompted by Officer Martin's statement that an inventory search would be conducted. The district court found to the contrary. Mr. Matthews does not challenge the district court's finding of probable cause or renew the argument that his statements are tainted because they were made in response to the officer's statement that an inventory of the vehicle was to be undertaken. Consequently, Mr. Matthews has waived this argument. In any event, we do not believe that the statement can be considered the fruit of any illegality because, at the time the statement was made, the officers had undertaken no action that was illegal and Mr. Matthews' statement was in no way a required response to the officer's declaration as to the department's plans for his automobile.

Mr. Matthews does argue in his brief that probable cause for *burglary* was lacking at the time the search was conducted. However, the government does not base its argument for the automobile exception on probable cause for robbery, but rather on probable cause, created by Mr. Matthews' own statements, for possession of an illegal weapon.

the vehicle exception, we have said, are twofold. "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office."

Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.

*California v. Carney,* 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406 (1985) (citations omitted). Our later cases have followed this reasoning. For instance, in *United States v. Gallman,* 907 F.2d 639, 641 (7th Cir.1990), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991), we noted that "[t]wo reasons are said to justify the automobile exception: First, the 'ready mobility' of an automobile creates circumstances in which it and the evidence could easily disappear; second, the pervasive regulation of automobiles creates a lesser expectation of privacy associated with them than, for example, a dwelling." Indeed, the Supreme Court, on numerous occasions, has sustained a search justified by the automobile exception in which the inherent mobility of an automobile was not at issue. *See, e.g., Florida v. Meyers,* 466 U.S. 380, 382, 104 S.Ct. 1852, 1853, 80 L.Ed.2d 381 (1984) (reversing suppression order when car was searched after being impounded); *Texas v. White,* 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975) (reversing suppression order when search was conducted on probable cause at station house). Clearly, therefore, the mobility of the vehicle is not essential to the application of the automobile exception. Because the diminished expectation of privacy alone is sufficient to conduct a search on probable cause, the district court erred when it held that the automobile exception did not apply because the vehicle had lost its mobility.

## Conclusion

Because the officer had probable cause to search the vehicle, the automobile exception applies. The judgment of the district court is reversed.

REVERSED.