41 F.3d 1511
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James S. LINTON, Defendant-Appellant,
 No. 94-2061.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 12, 1994.
Decided Oct. 20, 1994.
 
 Before CUMMINGS, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 James S. Linton unsuccessfully moved to suppress evidence seized by officers of the Milwaukee, Wisconsin Police Department during a search of his apartment. Linton entered a conditional plea of guilty to possession with intent to distribute cocaine base in violation of 21 U.S.C. Sec. 841(a)(1), and was sentenced to 140 months' imprisonment. Linton reserved the right to appeal the denial of his pretrial suppression motions. See Fed.R.Crim.P. 11(a)(2). We affirm.
 
 
 2
 The police officers conducted a lawful Terry investigative stop when they handcuffed Linton for the limited purpose of confirming Linton's identity as the person involved in a shooting offense. See United States v. Tilmon, 19 F.3d 1221, 1224 & 1228 n. 4 (7th Cir.1994); United States v. Smith, 3 F.3d 1088, 1094 (7th Cir.1993), cert. denied, 114 S.Ct. 733 (1994); United States v. Wilson, 2 F.3d 226, 231 (7th Cir.1993), cert. denied, 114 S.Ct. 1615 (1994); Tom v. Voida, 963 F.2d 952, 957-58 (7th Cir.1992); United States v. Glenna, 878 F.2d 967, 972 (7th Cir.1989). Linton and his wife voluntarily consented to the warrantless search of the apartment, which resulted in the seizure of cocaine base, materials for packaging and manufacturing cocaine, and $20,391 in cash. See United States v. Evans, 27 F.3d 1219, 1230-31 (7th Cir.1994); United States v. Betts, 16 F.3d 748, 753 (7th Cir.1994); United States v. White, 979 F.2d 539, 542 (7th Cir.1992). That the magistrate judge chose to credit the police officers' testimony over the Lintons' testimony regarding the consensual nature of the search is a matter to which we, as an appellate court, must defer. E.g. United States v. Wesson, 1994 WL 459258, * 7 (7th Cir. Aug. 25, 1994); United States v. Matthews, 1994 WL 417302, * 2 (7th Cir. Aug. 10, 1994). The district court's denial of the motions to suppress was not clearly erroneous. E.g. United States v. Scott, 19 F.3d 1238, 1242 (7th Cir.1994). We accordingly AFFIRM the decision of the district court for the reasons stated in the attached report and recommendation and order.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 EASTERN DISTRICT OF WISCONSIN
 
 3
 United States of America, Plaintiff,
 
 
 4
 v.
 
 
 5
 James S. Linton, Defendant.
 
 Case No. 93-CR-137
 ORDER
 I. PRETRIAL MOTIONS
 
 6
 On September 30, 1993, Magistrate Judge Robert Bittner issued a memorandum recommending that the court deny Defendant James Linton's motion to dismiss the indictment. Defendant Linton filed a timely objection to the Magistrate Judge's findings of fact and conclusions of law. These issues have now been fully briefed and, having reviewed the record de novo, the court adopts the findings of fact and conclusions of law set forth by Magistrate Judge Bittner and incorporates them herein by reference. Based upon these findings and conclusions, the court ORDERS that Linton's motion to dismiss the indictment for unconstitutional grand jury and petit jury selection IS DENIED.
 
 
 7
 IT IS FURTHER ORDERED that the orders issued by Magistrate Judge Bittner in his September 30, 1993, Recommendation and Order ARE AFFIRMED.
 
 II. SUPPRESSION ISSUES
 
 8
 On November 19, 1993, Magistrate Judge Bittner issued a second pretrial memorandum recommending that Linton's motion to suppress be denied. This recommendation was issued following an evidentiary hearing held on October 5, 1993. Linton again objected to the factual and legal bases for this recommendation. The issues Linton raised have now been briefed and the court has conducted a de novo review of the record as a whole, including a transcript of the suppression hearing.
 
 
 9
 First, Linton objects to the credibility findings made by Magistrate Judge Bittner in deciding whether Milwaukee police officers obtained a valid consent to conduct a warrantless search of Defendant Linton's apartment. At the hearing, Officer Ronald Lindsey testified that Defendant Linton himself consented to the search. In addition, fellow Officer Michael Hartert testified that Linton's wife Gale separately consented to the search. Gale also signed a written consent form after the search was underway.
 
 
 10
 At the hearing, both James and Gale denied giving consent, but the Magistrate Judge chose to believe the police officers. Despite some minor inconsistencies and memory lapses cited by the Defendant, the officers' accounts were not markedly illogical or inconsistent or otherwise unbelievable. The officers' accounts were corroborated by their contemporaneous notes and the signed consent form. Having read the testimony, this court does not find that the testimony of the officers was so implausible or suspicious as to render the Magistrate Judge's credibility rulings clearing erroneous. See United States v. Hardin, 710 F.2d 1231, 1236 (7th Cir.), cert. denied, 464 U.S. 918 (1983). Consequently, the court finds that the Lintons gave the Milwaukee police valid consent for a warrantless search of their home and the court will not suppress any of the evidence gathered during the search.
 
 
 11
 The second issue raised at the suppression hearing was whether the fruits of what Linton calls his illegal "arrest" must be suppressed. The record shows that at approximately 12:11 A.M. on August 5, 1993, Milwaukee Police Officers arrived at the apartment of James Linton after a citizen had complained that a man he knew as "Junior" had been discharging a shotgun in his vicinity. Having gained admittance from Gale Linton, the officers ascertained from her that James Linton is known as "Junior." The police officers also observed a nearby car with windows damaged by gunshot and were shown clothing by Gale Linton similar to the suspect's clothing as identified by the complaining party. Based on these factors, the police handcuffed Linton so that he could be led outside for the witness to identify. The officers explained that they were in a high crime neighborhood after midnight and that, with a yet-to-be-found gun involved, they used handcuffs because they feared for their safety. After Linton was led outside, the complaining witness positively identified him as the shooter and Linton was then put under arrest.
 
 
 12
 Linton says that he was illegally put under arrest without probable cause as soon as the handcuffs were put on. The government, on the other hand, maintains that the time from the handcuffing to the arrest after identification was merely an investigatory "Terry" stop, see Terry v. Ohio, 392 U.S. 1, 21 & 30 (1968), which was justified by reasonable suspicion.
 
 
 13
 The Seventh Circuit has ruled that the use of handcuffs does not automatically transform an investigatory stop into an arrest. See United States v. Wilson, 2 F.2d 226, 231-32 (7th Cir.1993); United States v. Glenna, 878 F.2d 967, 972 (7th Cir.1989). Although handcuffing a suspect prior to establishing probable cause for an arrest is a practice to be avoided if at all possible, the court believes that in this case the facts fit within the parameters of the Seventh Circuit's decisions permitting handcuffing in narrow circumstances. The Terry stop in this case was merely a temporary measure employed to effectuate the identification by the witness. Once Linton was positively identified, probable cause existed and he was formally put under arrest. Because of the time of night, the high crime area, and the nature of the offense under investigation, the officer's response and concern for their own safety was reasonable and commensurate with the particular circumstances.
 
 
 14
 For these reasons the court hereby adopts the findings of fact and conclusions of law found in the Magistrate Judge's report of November 19, 1993, and incorporates them herein by reference. Based upon these findings and conclusions, the court ORDERS that Defendant James Linton's motion to suppress IS DENIED.
 
 
 15
 Done and Ordered in Chambers at the United States Courthouse, Milwaukee, Wisconsin this 5th day of January, 1994.
 
 
 16
 /s/ Thomas J. Curran
 
 THOMAS J. CURRAN
 United States District Judge
 MAGISTRATE JUDGE'S RECOMMENDATION
 RE: DEFENDANT LINTON'S
 MOTION TO SUPPRESS
 EVIDENCE
 Nov. 19, 1993
 NATURE OF CASE
 
 17
 On September 30, 1993 this Court issued its recommendation and order regarding a number of pretrial motions filed by defendant Linton. Remaining for decision is defendant Linton's motion to suppress evidence which was the subject of an evidentiary hearing conducted by the Court on October 5, 1993. The motion is now ready for resolution and will be addressed herein.
 
 MOTION TO SUPPRESS
 
 18
 Defendant Linton moves the Court for issuance of an order suppressing the "fruits" of his unlawful warrantless arrest on August 5, 1993 at his residence located at 2710A North 15th Street, Milwaukee, Wisconsin. As grounds for his motion, he asserts that: no exigency existed for the warrantless entry to his home and his subsequent arrest; arresting officers did not have probable cause to believe he had committed a felony; and arresting officers did not obtain entry to his home by an effective, voluntary, consent. At the evidentiary hearing, City of Milwaukee Police Department (hereinafter referred to as MPD) Officers Ronald Lindsay, Mike Hartert, Thomas Doehling, and Detective Dale Jackson appeared and testified on behalf of the government. The defendant and his wife, Gail Gant-Linton testified on his behalf. Based on the testimony and evidence adduced at the evidentiary hearing and the uncontested facts, as well as having considered the briefs and arguments of the parties, this Court now makes its findings of fact and proposed disposition of such motion.
 
 Findings of Fact
 
 19
 On August 5, 1993, at approximately 12:11 a.m., MPD law enforcement officer Ronald Lindsay, a sixteen (16) year veteran assigned to the Tactical Unit, and his partner were dispatched to investigate a report of a shooting in the area of 2361 North 14th Street, Milwaukee, Wisconsin. Upon their arrival, they spoke to a citizen witness, Oden Ferriez, who claimed a man by the name of "Junior," later identified as defendant Linton, had fired a shotgun at him. Ferriez also described "Junior" and indicated he could show the law enforcement officers where the defendant resided. He led them to 2710A North 15th Street, Milwaukee, Wisconsin; the upper flat of a two (2) story duplex home located in a high crime neighborhood which is the site of frequent drug trafficking and firearms violations. At the duplex they were joined by approximately seven (7) other MPD officers.
 
 
 20
 There, Officer Lindsay, accompanied by three (3) other officers, proceeded up an exterior stairway to the second story flat and knocked on the door. After a "long time", a black female, later identified as the defendant's wife, Gail Gant-Linton, answered the door. She responded affirmatively to Officer Lindsay's inquiry whether "Junior" was on the premises and called for "Junior." The defendant then came to the door in his underwear and Officer Lindsay advised him that he was investigating an alleged shooting by a "Junior" and asked him to step outside for identification by a witness. Defendant Linton admitted he was known as "Junior" and agreed to the identification procedure. Officer Lindsay also told the defendant he wanted to search the premises for weapons. The defendant indicated he had no guns and consented to a search of the flat. Meanwhile, Gant-Linton brought the defendant clothing which Officer Lindsay observed matched Ferriez' description.
 
 
 21
 Because of the nature of the investigation, Officer Lindsay placed the defendant in handcuffs before leading him outside to where Ferriez could identify him. At that time, Officer Lindsay specifically advised the defendant he was not under arrest and told him that, if Ferriez did not identify him, he would be free to go back to sleep. The defendant seemed anxious to get out of the apartment and may have made said "let's get this over with because I know I'm going to jail." However, Officer Lindsay responded, "No, you will not go to jail; you are not under arrest." Shortly after Officer Lindsay and the defendant went outside, Officer Lindsay's partner informed him that Ferriez had identified the defendant as the shooter. The defendant was then placed under arrest.
 
 
 22
 Meanwhile, MPD law enforcement officer Hartert was inside the flat speaking to Gant-Linton. She told him that she and the defendant, her husband, resided there. Initially, Gant-Linton did not respond to Hartert's request for permission to look for the shotgun. However, when he stated that she would not want her young son to find the gun, Gant-Linton told him to go ahead and look around, gesturing toward the bedroom. During the period of nearly two (2) hours during which law enforcement officers were in the flat, the kitchen and living room were also searched, and a drug detection dog was utilized. At approximately 1:45 a.m., pursuant to standard MPD procedure directed towards eliminating claims of wrongdoing when the MPD acquires custody of significant amounts of property, Officer Doehling arrived at the flat to supervise the arrest and seizure of property. After he briefly interviewed Gant-Linton, ascertaining she paid the rent for the flat and had consented to the search of the premises by the MPD, Officer Doehling memorialized her consent in his memo book, where he wrote:
 
 
 23
 I live at and pay rent at 2710A 15 St. I give permission for the Milwaukee Police Department to conduct a search of my residence.
 
 
 24
 (Copy attached hereto). Gant-Linton signed her name beneath the statement.
 
 
 25
 Both the defendant and his wife denied consenting to a search of their flat. Gant-Linton further testified she was sick to her stomach and vomited in the bathroom while officers were still present. She also testified the only statement in the officer's memo book when signed by her was, "I live at and pay the rent at 2710A 15 St."
 
 Analysis
 Legality of Seizure
 
 26
 The threshold issue in this case is whether Officer Lindsay and his fellow MPD officers acted appropriately in response to Ferriez' complaint.
 
 
 27
 The law is well established that an encounter between a law enforcement officer and a citizen implicates the Fourth Amendment only if the officer seizes the citizen. United States v. Mendenhall, 446 U.S. 544, 555 (1980); Terry v. Ohio, 392 U.S. 1, 19 (1968). If a seizure does not occur; and, therefore, the encounter is consensual in nature (limited to questioning about an individual's identity and requesting identification), then police do not need justification for this contact. INS v. Delgado, 466 U.S. 210, 216-17 (1984); United States v. Dyer, 784 F.2d 812, 815-16 (7th Cir.1976); United States v. Borys, 766 F.2d 304, 310-11 (7th Cir.1985), cert. denied, 474 U.S. 1082 (1986). The test for determining whether a police-citizen contact rises to the level of a Fourth Amendment seizure is an objective one. United States v. Espinosa-Alvarez, 839 F.2d 1201, 1205 (7th Cir.1987); United States v. Pavelski, 789 F.2d 485 (7th Cir.), cert. denied, 479 U.S. 917 (1986). This formulation is whether, based on the totality of circumstances, a reasonable person would believe his freedom of movement is restrained or believes he is at liberty to disregard a police officer's request for information. If the latter, then a seizure has not occurred. United States v. Espinosa-Alvarez, 839 F.2d at 1205.
 
 
 28
 In order to assess the reasonableness of the seizure, this Court must weigh the circumstances on the Fourth Amendment "scale" for police/citizen encounters. See United States v. Chaidez, 919 F.2d 1193, 1197 (7th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 209 (1991). "[A] person has been 'seized' within the meaning of the Fourth Amendment.... only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 573 (1988) (citations omitted). Recently the Court of Appeals for this Circuit summarized the three (3) categories for police/citizen encounters in relation to the Fourth Amendment as follows:
 
 
 29
 The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe a person has committed or is committing a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The second category is an investigatory stop, which is limited to a brief, non-intrusive detention. This is also a Fourth Amendment "seizure", but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. United States v. Brignoni-Ponce, 422 U.S. 873, 881-82, 95 S.Ct. 2574, 2580-81, 45 L.Ed.2d 607 (1975); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment. United States v. Mendenhall, 446 U.S. 544, 553-55, 100 S.Ct. 1870, 1876-77, 64 L.Ed.2d 497 (1980); Terry, 392 U.S. at 19, n. 16, 88 S.Ct. at 1879, n. 16.
 
 
 30
 United States v. Johnson, 910 F.2d 1506, 1508 (7th Cir.1990), cert. denied, 489 U.S. 1051 (1991). See also, United States v. Adebayo, 985 F.2d 1333, 1337-38 (7th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 2947 (1993). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." United States v. Williams, 945 F.2d 192, 195 (7th Cir.1991). "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Withers, 972 F.2d 837, 841 (7th Cir.1992) (citations omitted).
 
 
 31
 The distinction between a consensual encounter and a stop is one of degree. Relevant factors include whether the encounter occurred in a public or private place, whether the suspect consented or refused to talk to the police, whether the police informed the suspect that he was not under arrest and was free to leave, whether the police removed the suspect to another area, whether the suspect felt capable of refusing to consent to the search, and whether the suspect eventually departs the area without hindrance. See United States v. Withers, 972 F.2d at 842. Other factors in this determination include: "The threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or the tone of voice indicating that compliance with the officer's request might be compelled." United States v. Withers, 972 F.2d at 842 (quoting United States v. Mendenhall, 446 U.S. 544, 554-55 [1980]. Additionally, the "lengthy" retention of documents, such as identification and airline tickets, is a factor in determining whether a stop has occurred. See United States v. Withers, 972 F.2d at 842.
 
 
 32
 Here, the encounter began when Officer Lindsay knocked on the door to the defendant's apartment, and was consensual. See United States v. Withers, 972 F.2d at, 841. This action was an appropriate and necessary part of the investigation of the report of a citizen complaint. Gant-Linton voluntarily answered Officer Lindsay's brief inquiry and summoned "Junior" to come to the door. Similarly, the defendant willingly responded to Officer Lindsay's inquiry as to his identity, agreed to the proposed identification procedure, and consented to a search of the flat. Only after Officer Lindsay ascertained that defendant Linton had admitted being known as "Junior" and had agreed to the identification procedure, was he handcuffed by Officer Lindsay.
 
 
 33
 At that time, defendant Linton became the subject of an investigatory stop. The use of handcuffs did not automatically transform the stop into an arrest. See United States v. Wilson, 2 F.3d 226, 231-32 (7th Cir.1993); United States v. Glenna, 878 F.2d 967, 972 (7th Cir.1989). Although the court in Glenna observed that the thought of allowing police to handcuff persons when probable cause to arrest is lacking is a troubling one, nevertheless, it held that, if in a rare case, "common sense and ordinary human experience" convince us that an officer reasonably believes that an investigative stop could be effectuated only in this manner, "we will not substitute our judgment for the officers as to the best methods to investigate." United States v. Glenna, 878 F.2d at 972 (citations omitted). Given the circumstances of this case where the defendant and Officer Lindsay had to proceed outside by descending a narrow exterior stairway from the flat, it was entirely reasonable for the officer to handcuff the defendant for his own protection. See United States v. Wilson, 2 F.3d at 231-232.
 
 
 34
 Additionally, this Court concludes that, at the time Officer Lindsay handcuffed the defendant, he had knowledge of "specific and articulable facts which, taken together with the rational inferences from those facts" which could reasonably cause him to conclude in light of his experience that criminal activity was afoot. Terry v. Ohio, 392 U.S. 1, 21 & 30 (1968); Alabama v. White, 496 U.S. 325, 329-30 (1990). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." Alabama v. White, 496 U.S. at 330. In this instance, the alleged victim of the shooting informed law enforcement officers that "Junior" had fired a shotgun at him, provided a description of "Junior's" clothing, and indicated he could show law enforcement officers where "Junior" lived. Ferriez was more than an anonymous informant. He had firsthand knowledge of the alleged incident and was willing to stand behind the information he provided to the law enforcement officers by submitting to a personal interview with them and confronting the defendant in an identification procedure. Ferriez also directed the law enforcement officers to "Junior's" residence. These actions by Ferriez evinced his reliability. Furthermore, the reliability of the information was enhanced by the fact that the incident, as described by Ferriez, occurred within a neighborhood reputed to be the site of frequent shootings. Thus, this Court concludes that, when Officer Lindsay handcuffed the defendant, he was appropriately conducting an investigatory stop. Finally, after the defendant was positively identified by Ferriez as the shooter, probable cause existed to believe defendant Linton had committed a crime and an arrest was appropriate.
 
 Consent to Search
 
 35
 "A warrantless search pursuant to consent which is 'freely and voluntarily given' does not violate the Fourth Amendment." United States v. Rice, 995 F.2d 719, 723 (7th Cir.1993) (citations omitted). "Whether a consent was voluntary, as opposed to the product of duress or coercion, is a question of fact to be determined from the totality of the circumstances." United States v. Rice, 995 F.2d at 723 (citation omitted). The government must prove the consent was voluntary by a preponderance of the evidence. United States v. Rice, 995 F.2d at 724.
 
 
 36
 In this instance both the defendant and his wife consented to the search of the apartment. Although defendant Linton denies he consented to the search, nevertheless this Court finds that his self serving testimony is not credible when weighed against Officer Lindsay's testimony that the consent was given. Likewise, this Court concludes the defendant's wife, Gant-Linton, consented to a search of the flat. A search upon the consent of the third party whom the officers at the time of the search reasonably believe has common authority over the premises does not violate the Fourth Amendment. Illinois v. Rodriguez, 497 U.S. 177, 186 (1990). Gant-Linton's testimony that she did not consent to a search of the flat is not credible when weighed against the conflicting testimony of Officer Hartert and the record of that consent in Officer Doehling's memo book. The scenario that she did not approve the entire statement, including the fact that she gave permission to search the residence, totally lacking in credence. Similarly, to the extent she implies that her consent was involuntary because she was ill while officers were searching, this Court finds such testimony to be incredible. From the photographs of the flat introduced into evidence at the hearing, it is apparent the flat was small and the sound of vomiting in the bathroom would not have gone unnoticed by law enforcement officers.
 
 
 37
 Finally, this Court concludes Gant-Linton's consent was not coerced. Any encounter between law enforcement officers and citizens in which the citizen is aware of the officers' identity will involve some degree of "subtle coercion." United States v. Rice, 995 F.2d at 724. Gant-Linton was not subjected to harsh interrogation. She was not overwhelmed with the physical presence of law enforcement officers. Although one (1) or two (2) officers apparently displayed weapons when they knocked on the door to the flat, the weapons were promptly holstered. There is no evidence that Gant-Linton was physically touched by any of the officers. Although the incident occurred during the night and Gant-Linton was never told she could refuse to consent to the search, these factors in and of themselves, do not render her consent involuntary. Moreover, even if this Court were to conclude that Gant-Linton did not voluntarily consent to a search of the flat, the validity of her consent is not dispositive of the suppression issue, since law enforcement officers had secured the defendant's own consent to a search of the premises.
 
 Summation
 
 38
 In sum, this Court concludes there is no basis for suppression of evidence in this case. Law enforcement officers carried out a proper investigatory stop supported by reasonable suspicion which led to probable cause for the defendant's arrest. They conducted a warrantless search of the defendant's home, pursuant to the knowing and voluntary consent of the defendant and his wife.
 
 CONCLUSION
 
 39
 NOW THEREFORE, IT IS HEREBY RECOMMENDED that the United States District Judge enter an order DENYING defendant Linton's motion to suppress fruits of unlawful arrest.
 
 
 40
 Your attention is directed to 28 U.S.C. Sec. 636(b)(1)(B) and (C) and Local Rule 13.03 (E.D.Wis.), whereby written objections to the foregoing recommendation may be filed in duplicate with the Clerk of Court within ten (10) days hereof. Failure to file a timely objection shall result in a waiver to your right to appeal.
 
 BY THE COURT:
 
 41
 /s/ Robert L. Bittner
 
 ROBERT L. BITTNER
 United States Magistrate Judge