**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jorge BARRAGAN, Jr., Defendant–
Appellant.**

No. 03–1736.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 2003.

Decided Jan. 30, 2004.

---

Daniel J. Graber, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Mark S. Brown, Wessel, Brown & Associates, Madison, WI, for Defendant–Appellant.

Before RIPPLE, MANION, and DIANE P. WOOD, Circuit Judges.

## ORDER

Jorge Barragan pleaded guilty to possession of a firearm by a felon, while reserving the right to appeal the district court's denial of his motion to suppress evidence seized during a warrantless search of a van. Barragan now appeals, claiming the warrantless search violated the Fourth Amendment. We affirm.

## I.

On December 10, 2001, at about 12:10 a.m., the van Jorge Barragan was riding in was stopped in Juneau County, Wisconsin. Officers pulled the van over because the driver failed to dim the vehicle's headlights. The driver of the van did not have a valid license, but provided the officers with a Wisconsin state identification card in the name of Armando Navejar. Officers then asked the passenger–later identified as Barragan–for his identification. Barragan responded that he did not have any identification, and he falsely gave his name as Steven Estrada.

The officers ran a computer check on Navejar and "Estrada," learning that the licenses of both had been revoked and that Navejar had three prior convictions for operating a motor vehicle after revocation. The officers returned to the van and arrested Navejar for driving with a revoked license. In doing so, the officers searched Navejar and found $700 cash in his pockets. They also searched the interior of the van and found a gun cleaning kit and a black wallet. Inside the wallet was an identification card for "Jorge Barragan." The picture on the identification card was of the man who had identified himself as Estrada. The officers ran a computer check on Barragan and discovered four outstanding warrants. The officers then arrested Barragan.

At some point during this encounter, the officers asked Navejar and Barragan where they were going. The duo responded that they were returning from Hayward, Wisconsin, but the officers noted that the van was headed *toward* Hayward when it was pulled over. Additionally, both men denied owning the van, with Barragan claiming that it belonged to an uncle.

After Navejar and Barragan were arrested, the police transported them to the sheriff's department for processing and impounded the van. During booking, Barragan pulled a legitimate identification card from his shoe and apologized for previously lying about his identity. Police also recovered about $4,050 in large bills from Barragan's pocket. An initial search of the impounded van, however, failed to provide any additional evidence.

The large amount of cash recovered aroused suspicions, prompting the officers to contact the head of the narcotics unit, Detective Kim Strompolis. Detective Strompolis agreed that the officers should bring in a drug-sniffing dog. Before the dog arrived, however, a woman called the sheriff's department, identifying herself as Barragan's girlfriend and the owner of the van. She asked when she could come by to pick it up. It is unclear what she was told, but in any event, before she arrived to picked up the van, Deputy Ray Starks and his dog Friday arrived to conduct a drug-sniff on the van.[1] Deputy Starks walked Friday around the van, and by the rear doors Friday alerted aggressively to the presence of drugs. Deputy Starks then placed Friday inside the van. Friday made a brief indication at the base of the driver's seat, but honed in on the area near the rear of the van's interior, where he aggressively indicated several times for the presence of an odor of an illegal substance. The officers focused on that area, lifting out a large stereo speaker box which appeared suspicious for several reasons: It appeared to be homemade out of pressboard; its protruding wires were not connected to anything; its seams were sealed; and the box was remarkably heavier than similar boxes Deputy Starks had encountered in other searches. Suspecting that the speaker box was not genuine, Deputy Starks pried the box apart. Inside was a disassembled machine gun, two handguns, $2,900 cash and a small electronic scale. Also inside was what appeared to be marijuana residue.

Based on this evidence, a grand jury indicted Barragan for unlawful possession of a firearm by a convicted felon; possession of a machine gun; and unregistered possession of a short-barreled firearm. Barragan filed a motion to suppress the evidence seized from the van. A magistrate judge recommended that Barragan's motion to suppress be denied, or in the alternative, recommended that the court stay its ruling to allow the parties to supplement the record concerning the reliability of Friday's drug-sniffs. Pursuant to a plea agreement in which the remaining counts were dismissed, Barragan entered a conditional guilty plea to count one of the indictment (possession of a firearm by a felon) and expressly reserved the right to appeal from the denial of his motion to suppress.

Following Barragan's conditional plea, he sought from the government all records related to previous sniffs performed by Friday. After some unnecessary delay, Deputy Starks eventually provided the records in his possession from the results of the various drug-sniffs Friday had performed. The district court, in considering the magistrate judge's recommendation, also heard testimony that Friday's "personnel" file was clean and that Friday had never received a reprimand for falsely alerting to the presence of drugs. Deputy Starks also testified that Friday had received sixteen to eighteen weeks of training at patrol narcotics detector school before the two were partnered. After this training, he and Friday completed a six-week course together at patrol narcotics detector school. Deputy Starks further explained that Friday had been involved in over 100 sniffs, that Friday had never been

---

1. Notwithstanding the girlfriend's claim of ownership, during the later-held suppression hearing Barragan asserted ownership of the van, presenting evidence that it was titled in his name and that he had purchased it from a car salesman sometime prior to December 10, 2001. Barragan seemed to take this tack to guarantee standing to challenge the search, although it also explains why Barragan was charged with possession, even though he was merely the passenger of the van.

suspended or taken off duty, and that Friday had never received any complaints from officers concerning his services. Deputy Starks further testified that in virtually every one of the hundred or so sniffs Friday performed, when Friday alerted, either drugs were present or other circumstances accounted for the odor of drugs. Upon learning that Friday had participated in hundreds of drug-sniffs, Barragan objected, noting that Starks had provided only 38 usage reports from previous cases. Deputy Starks explained that when Friday was working for another county, he did not receive copies of the reports and that there was no way to track that information. Based on Deputy Starks' explanation, the district court concluded that the government had fulfilled its discovery obligations and had provided all of the records it was reasonably able to provide.

The district court then denied Barragan's motion to suppress, finding that the evidence was sufficient to establish the reliability of Friday and that Friday's alerting, coupled with the other evidence, established probable cause justifying the officers' warrantless search of the van. The district court sentenced Barragan to 70 months in prison. Barragan appeals.

## II.

In appealing the district court's denial of his motion to suppress, Barragan first challenges the district court's finding that the government adequately established Friday's reliability. Barragan next claims that the government was required to obtain a warrant prior to searching the van, or alternatively that even if a warrant was not required, probable cause did not exist and therefore the warrantless search violated his Fourth Amendment rights. We consider each issue in turn, reviewing "the

district court's factual findings in [the] suppression hearing for clear error, and its legal conclusions and mixed questions of law and fact de novo." *United States v. Wimbush,* 337 F.3d 947, 949 (7th Cir.2003).

### A. Friday's Reliability

■ Barragan first claims that the district court erred in finding Friday reliable because the government had turned over only 38 usage reports, whereas Friday had been involved in hundreds of drug-sniffs. Without this evidence, Barragan contends, it was impossible for the district court to make an appropriate finding concerning Friday's reliability.

It would obviously be best to have records concerning the outcome of every drug-sniff involving Friday. However, the absence of this evidence is not fatal because the district court had before it sufficient evidence from which it could determine Friday's reliability. Specifically, the district court heard of Friday's extensive training in drug-sniffing, as well as the training Friday and Deputy Starks received together. The record also demonstrated that Friday's "personnel" file was clean and that there were no reprimands for false positives. Additionally, no complaints were leveled against Friday's performance by any of the law enforcement officers using Friday's services. Finally, Deputy Starks, Friday's handler, testified that in virtually all, if not all, of the sniffs in which Friday alerted, either drugs were recovered or there were other circumstances indicating that the scent of drugs was present explaining Friday's positive response. Here the officers found what appeared to be marijuana residue in the box with the weapons and money. Based on this evidence, the district court's finding that Friday was reliable is supported by the evidence and not clearly erroneous.[2]

2. We also reject Barragan's attempt to cast     the issue as a due process denial or a viola-

## B. Warrantless Search of the Van

Barragan next challenges the warrantless search of the van.[3] In this regard, Barragan makes two distinct arguments: he first argues that, because the automobile was rendered immobile in the impound lot, the officers were required to obtain a warrant to search the van. Alternatively, Barragan contends that even if a warrantless search of an automobile is permissible where probable cause exists, he maintains that probable cause did not exist here, and therefore the search was unconstitutional.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation...." U.S. Const. amend. IV. "While the Fourth Amendment generally requires that the issuance of a warrant, supported by probable cause, precede any search, the Supreme Court has recognized several exceptions to the warrant requirement." *Stanley v. Henson*, 337 F.3d 961, 963 (7th Cir.2003). One such exception is the automobile exception: "[T]he 'automobile exception' to the Fourth Amendment's warrant requirement ... allows police to search a vehicle without a warrant when they have probable cause to believe it contains contraband or evidence of a crime." *Wimbush*, 337 F.3d at 950 (citing *Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301, (1990)).

■ While acknowledging the existence of the automobile exception, Barragan argues that the exception is limited to situations in which the automobile is mobile. And because in this case the van was impounded and not mobile, Barragan argues that the automobile exception does not apply and that the government was required to obtain a search warrant prior to searching the van. This court has already rejected this theory in *United States v. Matthews*, 32 F.3d 294, 298–99 (7th Cir. 1994).

In *Matthews*, the district court concluded that because the automobile had lost its mobility by the time of the search–the car was being held by the police in its impound lot–the automobile exception to the warrant requirement did not apply. This court reversed, stating that "the mobility of the vehicle is not essential to the application of the automobile exception." *Id.* at 299. In reaching this conclusion, we explained that although in early holdings the Supreme Court identified the automobile's inherent mobility as justifying a warrantless search, the exception has since been expanded and even in cases where an automobile is not immediately mobile, a warrantless search is justified because of the lower expectation of privacy in automobiles. *Id.* Thus, as we made clear in *Matthews*, the automobile exception to the Fourth Amendment allows a warrantless search of an automobile if probable cause exists, whether or not the automobile retains its mobility. *Id.*

■ Barragan argues alternatively that the warrantless search of the van nonetheless violated the Fourth Amendment because it was not supported by probable cause. "Probable cause exists if, under the totality of the circumstances, it is fairly probable that the car contains contraband

tion of *Brady,* because the record demonstrates that the government did not suppress any evidence, instead providing all records concerning Friday that were available.

3. Barragan does not challenge the first two warrantless searches of the van, the first of which was justified as a search incident to an arrest and the second as a constitutionally permissible inventory search.

or evidence." *United States v. Webb*, 83 F.3d 913, 916 (7th Cir.1996). In this case, the totality of the circumstances justified the officers' belief that the car contained contraband. Specifically, the evidence included the finding of a gun cleaning kit without a gun, and the false statements made by Barragan as to his identity, as well as the statement Barragan and Navejar made that they were headed to Hayward, when they were actually driving in the wrong direction. Their statements about who owned the van were also contradicted by Barragan's girlfriend. Additionally, officers seized large amounts of currency and discovered outstanding warrants for Barragan, and Friday alerted to the presence of drugs.[4] Barragan argues in response that since two previous searches uncovered nothing, the circumstances noted above failed to establish probable cause. However, law enforcement officers, based on their experience, have learned that drug couriers have gone to great lengths to hide drugs in automobiles. *See, e.g., United States v. Thomas*, 294 F.3d 899, 906 (7th Cir.2002) ("[O]fficers recovered from a hidden compartment in his car a loaded handgun, $20,000, a scale for measuring drugs and plastic bags for breaking cocaine into smaller measurements...."); *United States v. Mojica*, 185 F.3d 780, 785 (7th Cir.1999) (evidence established defendant had secret compartments installed in cars for hiding drugs and money). Thus, the fact that a superficial search did not turn up anything does not negate the other evidence (especially the alerting by Friday) which was more than sufficient to create a fair probability that contraband would be found in the van. Accordingly, the warrantless search was constitutionally permissible and the district court did not err in denying Barragan's motion to suppress.[5] *United States v. Patterson*, 65 F.3d 68, 71 (7th Cir.1995) (drug dog alert combined with other suspicious circumstances provided probable cause to search vehicle); *United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir.1994) (dog identification of drugs provides probable cause); *United States v. Morales–Zamora*, 914 F.2d 200, 205 (10th Cir.1990) (same).

### III.

The district court did not commit clear error in finding that Friday was reliable based on his training, "personnel" record and Deputy Stark's testimony concerning his reliability. Friday's positive alert, coupled with the false statements, the large amount of currency, the gun cleaning kit, and the outstanding warrants, established probable cause that contraband would be found in the van. Accordingly, under the automobile exception, the officers' search was constitutionally permissible and the district court did not err in denying Barragan's motion to suppress. We AFFIRM.

---

4. Barragan does not claim that walking Friday around the exterior of the van constituted a search, and with good reason. *See Edmond v. Goldsmith*, 183 F.3d 659, 661 (7th Cir. 1999), *aff'd sub nom. City of Indianapolis v. Edmond*, 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (sniffing of a car on the outside by a dog does not rise to the level of a search).

5. Barragan's argument is limited to the existence of probable cause. He does not challenge the officers' right to remove the speakers and look inside. And rightly so. *See Webb*, 83 F.3d at 916 ("A lawful automobile search extends to all parts of the vehicle where contraband or evidence could be concealed, including the trunk.").