UNITED STATES of America, Appellee,

v.

Terry Lewis RAINO, Appellant.

No. 92–1236.

United States Court of Appeals,
Eighth Circuit.

Submitted June 9, 1992.

Decided Nov. 19, 1992.

Virginia Villa, Minneapolis, Minn., argued (Scott F. Tilsen and Jaye Meyer, on the brief), for appellant.

Nathan P. Petterson, Minneapolis, Minn., argued (Thomas Heffelfinger, on the brief), for appellee.

Before WOLLMAN, Circuit Judge, and BRIGHT and ROSS, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Appellant Terry Raino entered a conditional guilty plea to one count of possession with intent to distribute cocaine base, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and one count of use of a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1). Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, appellant reserved the right to appeal the denial of his motion to suppress the evidence presented against him. Appellant was sentenced to 87 months for the drug count and 60 months for the firearm count. He now appeals the denial of his motion to suppress the evidence obtained in the search of his person and vehicle.

On the evening of September 27, 1991, at approximately 11:30 p.m., Minneapolis po-

lice received a report that shots had been fired in the vicinity of 17th and Sheridan Avenue North, in Minneapolis, Minnesota. Witnesses told investigators that it was a drive-by shooting involving a light blue El Camino. Police received a second report of shots fired in the same vicinity just after midnight. An officer was dispatched to the area and while there heard another shot fired, again in the area of 17th and Sheridan Avenue North. The officer then called for back-up assistance. There were no witnesses to identify the nature of these subsequent gunshots.

When Officers David Roiger and Tony Casper arrived on the scene, they observed a group of people mingling in the street and several people fighting in a nearby yard. In keeping with standard police procedure for a "shots fired" call, Officer Roiger placed his gun in his lap as he arrived on the scene.

Officer Roiger immediately observed a white BMW double-parked in the intersection of 17th and Sheridan Avenue North. Appellant Terry Raino was seated behind the wheel of the BMW and there were two females leaning on the driver's side of the car, talking with appellant. Officer Roiger pulled his marked patrol car within 15 feet of the BMW, partially blocking appellant's exit. The officer testified that as he put his car in park he observed appellant's vehicle begin to slowly pull away. Officer Roiger shined his spotlight on Raino, who "appeared to be nervous." The officer quickly got out of his car, pointed his gun towards the BMW, and ordered the driver to stop.

Officer Roiger testified that at this point the appellant reached behind the driver's seat with his right hand and appeared to be fumbling in the back seat for a few seconds. Appellant was directed to put his hands on the steering wheel and was then ordered out of the car, at which time Officer Casper conducted a patdown frisk. At the same time, Officer Roiger looked through the rear driver's side window and saw a silver revolver on the floor behind the driver's seat. Appellant was placed under arrest and a subsequent search of appellant's person and automobile revealed 27.9 grams of crack cocaine and approximately $3,400 in cash.

On appeal, Raino contends that the show of force by the police officer elevated the initial detention into an arrest which, without probable cause, warrants an exclusion of the evidence thereby seized. Alternatively, Raino argues that the officer lacked even the reduced "reasonable suspicion" necessary to support an investigative stop permissible under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

We first examine the nature of Raino's initial detention. It is well established that both investigative stops and arrests are "seizures" under Fourth Amendment law. However, while an investigative stop must be supported by reasonable, articulable suspicion that criminal activity may be afoot, an arrest must be supported by probable cause. *United States v. Miller*, 974 F.2d 953, 956 (8th Cir.1992). Further, we have held that "[a]n action tantamount to arrest has taken place if the officers' conduct is more intrusive than necessary for an investigative stop." *United States v. Rose*, 731 F.2d 1337, 1342 (8th Cir.), *cert. denied*, 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984). However, even in the case of an investigative stop, an officer may take such steps as are "reasonably necessary to protect [his] personal safety and to maintain the status quo" so that the limited purposes of the stop may be achieved. *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 684, 83 L.Ed.2d 604 (1985). Appellant argues that the display of a weapon by Officer Roiger turned the initial detention into an unlawful arrest. We disagree.

This court has held that neither the partial blocking of a suspect's automobile nor the officers' approach to a suspect's car with guns drawn elevates an investigative stop into an arrest "if the police action is reasonable under the circumstances." *United States v. Jones*, 759 F.2d 633, 638, *cert. denied*, 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985). Factors to consider in determining the reasonableness of the officers' actions include (1) the number of officers and police cars involved; (2) the nature of the crime and whether there is reason to

believe the suspect might be armed; (3) the strength of the officers' articulable, objective suspicions; (4) the erratic behavior of or suspicious movements by the persons under observation; and (5) the need for immediate action by the officers and lack of opportunity for them to have made the stop in less threatening circumstances. *Id.* at 639–40.

■ The officers' actions in the instant case were reasonable under the circumstances. The officers were responding to a late night call in an area where there had been three separate reports of shots fired. Accordingly, the officers reasonably anticipated that, should their suspicions about the appellant's vehicle be confirmed, the occupant would certainly be armed. There was a considerable amount of activity in the area; there was a large group of people gathered in the street and another group of people involved in a fight in a nearby yard. Under these circumstances, Officer Roiger acted reasonably in using extreme caution as he initially approached and evaluated the situation. These actions were to protect the officers' personal safety and will not serve to transform the stop into an arrest. Under the circumstances of this case, the officers' actions did not exceed the bounds of an investigative stop.

■ Having thus concluded that the initial encounter was within the scope of an investigative stop, we now must consider whether the stop was justified at its inception. "The minimal standard of articulable justification required by the fourth amendment for an investigative stop is whether the police officers were aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant[ed] suspicion that a crime [was] being committed.' " *Id.* at 642 (quoting *United States v. Martin,* 706 F.2d 263, 265 (8th Cir.1983)).

First, the officers were responding to a late-night call that shots had been fired in precisely the area appellant's car was parked. Although one report indicated that a light blue El Camino may have been involved in the initial shooting, there was no information available regarding the source of the subsequent shots fired. As the officers arrived on the scene they im-

mediately noticed appellant's car double-parked in the intersection of 17th and Sheridan Avenue North. The magistrate found at the suppression hearing that as the officers approached appellant's car, the appellant slowly pulled away. When the officer shined a spotlight on appellant's face, he appeared to be nervous. The officer then exited his car with his gun drawn and ordered the appellant to stop.

The Supreme Court has recognized that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

Under the circumstances of this case, we conclude that the officers had a reasonable, articulable suspicion that appellant was involved in criminal activity. For the foregoing reasons we must conclude that the trial court did not err when it determined that this investigative stop was justified at its inception and reasonable in scope. Accordingly, the judgment of the district court denying the motion to suppress is affirmed.