In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3520

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

QUINCY WIMBUSH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 00 CR 50050—**Phillip G. Reinhard**, *Judge.*

ARGUED APRIL 18, 2002—DECIDED JULY 28, 2003

Before FLAUM, *Chief Judge*, and HARLINGTON WOOD, JR.,
and POSNER, *Circuit Judges*.

FLAUM, *Chief Judge.* In May 2000 a police officer in
Rockford, Illinois, pulled over the sport utility vehicle
driven by convicted felon Quincy Wimbush, suspecting that
Wimbush may have been involved in a shooting. While
questioning Wimbush, the officer smelled marijuana and
noticed an open container of alcohol in the console. A search
of the vehicle produced a weapon. A federal grand jury later
returned a one-count indictment accusing Wimbush of
possession of a firearm by a felon, 18 U.S.C. § 922(g)(1).
Wimbush eventually pleaded guilty, but in his plea agree-
ment reserved the right to appeal the denial of his motion
to suppress. The district court sentenced him to 120

months' incarceration. On appeal Wimbush argues that the court erred by denying his motion to suppress, and also contends that his sentence was too severe. We affirm.

## I. BACKGROUND

Late at night on May 16, 2000, Officer Todd Murr responded to a radio dispatch reporting a shooting in an alley near Elm Street on the west side of Rockford. The dispatcher described the suspect as a black male, possibly named "Sean Burks," and relayed that he was driving a burgundy or maroon Ford Explorer with shiny rims. Murr set up surveillance at an intersection seven to eight blocks away in a high-crime neighborhood.

Approximately fifteen minutes after the shooting, Murr saw a purple Explorer with shiny rims drive through the intersection. The vehicle was being driven by a black male whose identity was unknown at the time. Murr pulled over the car and asked the driver—Wimbush—for identification. Wimbush responded that he did not have his license with him. Murr then instructed Wimbush to step out of the car. As Wimbush opened the door and stepped out of the vehicle, Murr smelled marijuana and spotted an open bottle of alcohol in the console next to the driver's seat.

After Wimbush left the vehicle, Murr asked where he was coming from. Wimbush replied, "From my cousin's house on Elm, I mean Avon." Believing Wimbush was acting suspiciously and knowing that the shooting had occurred on Elm Street, Murr asked Wimbush to sit in the patrol car. Wimbush complied. Murr then told Wimbush that he was going to search the vehicle because of the marijuana and open alcohol and asked whether he would find anything in it. Wimbush replied "go ahead and look." Another officer who had arrived on the scene as back-up searched the vehicle's passenger compartment and discovered a mari-

juana cigarette, two ski masks, and an unloaded .380 semi-automatic handgun.

In his suppression motion, Wimbush argued that evidence of the gun should be excluded because the stop and subsequent search were unlawful. At a hearing Wimbush testified that before he had gotten out of the car, Murr reached in the vehicle, placed it in park, turned off the ignition, and then yanked the keys out of the ignition. He further testified that Murr never asked to see identification, and that Murr had pulled Wimbush out of the truck and placed him in handcuffs. Murr refuted portions of Wimbush's account, testifying that he did ask for identification, and that he never reached into the vehicle. The district court credited Murr's version of the facts and denied the motion.

## II. DISCUSSION

### A. Motion to Suppress

On appeal Wimbush argues that Murr lacked reasonable suspicion to detain him, and that police lacked probable cause to conduct a warrantless search of his vehicle. We review the district court's factual findings in a suppression hearing for clear error, and its legal conclusions and mixed questions of law and fact *de novo*. *United States v. French*, 291 F.3d 945, 950-51 (7th Cir. 2002). Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), police officers may conduct a brief, investigatory stop of a suspect if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed. "Reasonable suspicion" must be based on some objective manifestation that the suspect is involved in criminal activity. *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000). Although police may not detain a suspect based merely on a hunch, the likelihood of criminal activity need not rise to the level required for probable cause and falls well short of meeting a preponder-

ance of the evidence standard. *United States v. Arvizu*, 534 U.S. 266, 274 (2002); *United States v. Hendricks*, 319 F.3d 993, 1001 (7th Cir. 2003), *petition for cert. filed* (May 21, 2003) (No. 02-11129). In evaluating the reasonableness of a stop, courts must examine the totality of the circumstances known to the officer at the time of the stop. *United States v. Jackson*, 300 F.3d 740, 745-46 (7th Cir. 2002).

The instant stop requires close scrutiny—Murr halted the vehicle based on a general dispatch report, and the factual foundation for the description supplied was unknown to him. But Wimbush does not argue that Murr erred by relying merely on the dispatch report; instead, he contends that Murr stopped him only because he is black and therefore the stop was unreasonable. As the government correctly notes, however, Murr stopped Wimbush not only because he matched the description of the suspect, but also because Wimbush was driving a vehicle substantially similar to the one driven by the suspect—a purple SUV with shiny rims. Moreover, the shooting had occurred only minutes earlier in an area just eight blocks away. In light of these objective factors, the court did not clearly err by refusing to suppress evidence of the gun based on the stop. *See Swift*, 220 F.3d at 507 (police officer reasonably stopped a red jeep based on reports that bank robbers had escaped in a matching vehicle that included some of the same license plate numbers, coupled with knowledge that a red jeep involved in other robberies might be found in complex where jeep was stopped); *United States v. Tilmon*, 19 F.3d 1221, 1225 (7th Cir. 1994) (upholding stop of vehicle that matched description of vehicle involved in bank robbery committed two hours earlier at a location 50 miles away); *see also United States v. Chapman*, 954 F.2d 1352, 1357 (7th Cir. 1992) (officers had probable cause to arrest defendant hiding in vehicle based on matching description of getaway vehicle); *Creighton v. Anderson*, 922 F.3d 443, 450 (8th Cir. 1990) (upholding stop of vehicle even though

defendant's vehicle was slightly different color and different make of supposed getaway car).

Wimbush also challenges the warrantless search of his vehicle, but it is apparent that the police acted appropriately for several reasons. Officers may conduct a protective search of a vehicle's passenger compartment when they have a reasonable belief that the suspect poses a danger and that their safety may be threatened by the possible presence of weapons. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983); *United States v. Mancillas*, 183 F.3d 682, 699-700 (7th Cir. 1999). Here, Murr reasonably believed that Wimbush posed a danger—there had just been a shooting nearby involving a vehicle and driver matching Wimbush's description. Moreover, Wimbush initially said he was coming from the street where the shooting occurred, only to change his story. And it does not matter that Wimbush was out of the SUV and in the patrol car before the protective search. *See United States v. Sholola*, 124 F.3d 803, 818 (7th Cir. 1997).

The search was also justifiable on other grounds. Wimbush admitted to driving without a license, a crime, *see* 625 ILCS 5/6-101, that authorized a warrantless arrest and an incidental search of the vehicle's passenger compartment. *See New York v. Belton*, 453 U.S. 454, 460, 460-61 n.4 (1981). The search also was proper under the "automobile exception" to the Fourth Amendment's warrant requirement, which allows police to search a vehicle without a warrant when they have probable cause to believe it contains contraband or evidence of a crime. *Alabama v. White*, 496 U.S. 325, 332 (1990). Murr saw an open container of alcohol inside the car and smelled marijuana, further justifying the search. *See United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992) (discovery of open container of alcohol in car in violation of state law gave police probable cause to conduct warrantless search of car); *United States v. Taylor*, 162

F.3d 12, 21 (1st Cir. 1998) (marijuana odor emanating from car justified searching it for drugs). Finally, the warrantless search was valid as a routine post-arrest inventory search, which authorizes police to search vehicles in lawful custody in order to secure or protect the car and its contents. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *Sholola*, 124 F.3d at 818. Here, police lawfully arrested Wimbush for driving without a license and for driving with an open container of alcohol, and it was undisputed that the car was searched in a manner consistent with the police department's inventory policy. For all of these reasons, the district court did not clearly err by denying Wimbush's motion to suppress based on the search of his vehicle.

### B. Sentencing Adjustments

Wimbush also challenges his sentence. Specifically, he contends that the district court erred by imposing a two-level upward adjustment in his offense level for obstruction of justice under U.S.S.G. § 3C1.1. He also complains that the court erred by failing to award him a three-level reduction in his offense level under U.S.S.G. § 3E1.1 for accepting responsibility for the crime. However, we will not entertain either of these arguments because Wimbush unequivocally waived his right to appeal the term imposed. Paragraph 13 of the plea agreement states that "the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in [18 U.S.C.] Section 3742 or on any ground whatsoever." During the plea colloquy, the district court adequately explained the consequences of that waiver, and Wimbush confirmed that he understood that he was relinquishing his right to appeal his sentence. Because Wimbush was sentenced within the statutory maximum and because he does not dispute that his plea was knowing

and voluntary, he waived these challenges to his sentence. *See United States v. Rhodes*, 330 F.3d 949, 951 (7th Cir. 2003).

### III. CONCLUSION

The initial stop and subsequent search of Wimbush's vehicle without a warrant was reasonable under the circumstances, and the district court correctly denied Wimbush's motion to suppress evidence obtained from the search. Moreover, Wimbush knowingly and expressly waived his right to challenge any upward adjustments to his sentence by the terms of his plea agreement. His conviction and sentence is therefore affirmed.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*