**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEVEN A. ROMERO,

      Plaintiff-Appellee,

v.

JEREMY STORY, MANUEL FRIAS, and VINCENT SHADD, individually and in their official capacities as Law Enforcement Officers for the Las Cruces Police Department,

      Defendants-Appellants,

and

CITY OF LAS CRUCES,

      Defendant.

No. 11-2139

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 2:10-CV-00591-RB-LAM)**

---

Russell Dean Clark, Las Cruces, New Mexico, for Plaintiff-Appellee.

David P. Lutz (William L. Lutz with him on the brief), Martin, Lutz, Roggow, & Eubanks, P.C., Las Cruces, New Mexico, for Defendants-Appellants.

---

Before **KELLY**, **BALDOCK,** and **TYMKOVICH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

Plaintiff Steven A. Romero brought this action against Defendants Jeremy Story, Manuel Frias, and Vincent Shadd, Las Cruces, New Mexico law enforcement officers, alleging unlawful arrest and excessive force in violation of 42 U.S.C. § 1983.[1] The district court denied Defendants' claim to qualified immunity in the context of summary judgment, and Defendants appealed. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's denial of summary judgment as to unlawful arrest, vacate the district court's denial of summary judgment as to excessive force, and remand.

I.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations omitted). But before turning to the merits, we must address our jurisdiction over this appeal. Our jurisdiction extends to "final decisions" of the district courts. 28 U.S.C. § 1291. Although orders denying summary judgment are ordinarily not appealable, a decision of a district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too

_____

[1] Plaintiff also sued Defendant City of Las Cruces for municipal liability and the individual defendants for violations of state tort law. The present appeal involves only the civil rights claims against the law enforcement officers and does not include the state law claims or the claims against the City of Las Cruces.

2

important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Thus, "[a]n appealable interlocutory decision must . . . conclusively determine the disputed question and that question must involve a claim of right separable from, and collateral to, rights asserted in the action." Mitchell v. Forsyth, 472 U.S. 511, 527 (1985) (internal quotations and citation omitted). The Supreme Court has told us "the denial of a defendant's motion for . . . summary judgment on the ground of qualified immunity easily meets these requirements." Id. Accordingly, "we have interlocutory jurisdiction over denials of qualified immunity at the summary judgment stage to the extent that they 'turn[] on an issue of law.'" Fogarty v. Gallegos, 523 F.3d 1147, 1153 (10th Cir. 2008) (citing Mitchell, 472 U.S. at 530).

But the scope of our review is limited. We "simply take, as given, the facts that the district court assumed when it denied summary judgment." Johnson v. Jones, 515 U.S. 304, 319 (1995). Accordingly, "we may review whether the set of facts identified by the district court is sufficient to establish a violation of clearly established constitutional right, but we may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." See Forbes v. Township of Lower Merion, 313 F.3d 144, 147 (3d Cir. 2002) (Alito, J.) (internal quotations omitted). In other words, "[a]n order denying summary judgment based on qualified immunity necessarily involves a legal

3

determination that certain alleged actions violate clearly established law. Defendants may therefore assert on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment meets the applicable legal standards." Medina v. Cram, 252 F.3d 1124, 1130 (10th Cir. 2001) (internal quotations and citation omitted). "Within this limited jurisdiction, we review de novo the district court's denial of a summary judgment motion asserting qualified immunity. Dodds v. Richardson, 614 F.3d 1185, 1192 (10th Cir. 2010) (internal quotations omitted).

## II.

The district court based its qualified immunity decision on the following set of facts. Aaron Diaz heard a loud noise emanating from outside his apartment. He ventured outside to investigate and noticed someone had vandalized his automobile. Diaz observed a Hispanic male in the same parking lot as his automobile. Diaz called law enforcement twice—initially to report the vandalism, and later to report the same Hispanic male he saw earlier in the parking lot had entered Apartment 17. The defendant officers responded. Upon Defendants' arrival, Diaz again commented the Hispanic male had entered Apartment 17. Defendants subsequently knocked on the door to Apartment 17. Plaintiff, a Hispanic male, opened the door and took one or two steps outside the apartment. Defendants told Plaintiff to take his hands from his pockets. Plaintiff complied. Plaintiff, not understanding why law enforcement knocked on the door, turned back toward the apartment and proceeded one or two

4

steps. Defendant Story grabbed Plaintiff from behind to prevent Plaintiff's entry into the apartment. Another defendant officer simultaneously performed a leg sweep, causing Plaintiff to hit the ground.[2] As a result of the fall, Plaintiff chipped a tooth and cut his lip. Defendants handcuffed Plaintiff and placed him under arrest.

Plaintiff brought suit alleging Defendants unlawfully arrested him and used excessive force while executing that arrest, both in violation of the Fourth Amendment. Defendants filed a motion for summary judgment as to Plaintiff's civil rights claims, arguing they were entitled to qualified immunity. In the district court, Defendants maintained they had probable cause to arrest Plaintiff based on his "flight" and "evasion," pursuant to N.M. Stat. Ann. § 30-22-1(B).[3] That statute provides: "Resisting, evading or obstructing an officer consists of . . . intentionally fleeing, attempting to evade or evading an officer of [New Mexico] when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the

---

[2] The district court's recitation of the facts does not make clear who performed the leg sweep. The district court initially stated Defendant Frias stayed in the parking lot by the van while Defendants Story and Shadd went to the apartment, but later, the district court stated Frias performed the leg sweep that caused Plantiff to hit the ground.

[3] In an affidavit, Plaintiff disputes Defendants' factual contention regarding the alleged reentry into the apartment. In that affidavit, Plaintiff attests he did not flee the police. Plaintiff states he initially stepped outside the front door "a foot or two and stepped back inside almost immediately" to tell the occupant of the apartment the police were outside. This factual dispute, however, does not impact our review on appeal because, as stated above, we "simply take, as given, the facts that the district court assumed when it denied summary judgment." Johnson, 515 U.S. at 319.

5

officer is attempting to apprehend or arrest him." N.M. Stat. Ann. § 30-22-1(B). Additionally, Defendants contended they had reasonable suspicion to detain a Hispanic male in Apartment 17 in connection with the vandalism because of Diaz's identification. As to excessive force, Defendants argued they employed force for officer safety reasons. Moreover, they contended a leg sweep is not excessive force to prevent a person from resisting or evading arrest.

The district court denied Defendants' motion for summary judgment on the basis of qualified immunity. The court first held Defendants violated Plaintiff's constitutional right to be free from arrest without probable cause. The district court stated that under N.M. Stat. Ann. § 30-22-1(B), law enforcement must "reasonably believe that there existed a lawful basis to apprehend or arrest [Plaintiff], unrelated to the flight." Aplt. App. at 110. The court then examined whether Defendants had reasonable suspicion to detain Plaintiff in connection with the vandalism. The court stated Defendants were informed only that: "(1) a Hispanic male had been sighted in the vicinity of a vandalized car; and (2) that Hispanic male was, at the time the police arrived, located in Apartment No. 17." Id. at 111. The district court concluded Plaintiff's mere presence at the scene of a *past* crime did not support a reasonable suspicion Plaintiff had committed the vandalism. Because the district court held Defendants lacked reasonable suspicion to apprehend Plaintiff before he turned around to enter Apartment 17, the court did not reach the parties' arguments concerning whether Plaintiff's behavior constituted flight or evasion. The district

6

court further held the outcome of Plaintiff's excessive force claim depended on the outcome of his unlawful arrest claim. Therefore, because the district court concluded a dispute of material fact existed regarding Plaintiff's unlawful arrest claim, the court believed it could not evaluate whether the force used in connection with that arrest was excessive and denied qualified immunity on that claim.

III.

Having determined our jurisdiction over this action and examined the facts the district court relied on in denying qualified immunity, we turn to the merits. Once a defendant asserts the doctrine of qualified immunity, "the plaintiff bears the burden of satisfying a strict two-part test." Dodds, 614 F.3d at 1191 (internal quotations omitted). The plaintiff must show: "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct. . . ." Id. (internal quotations omitted).

On appeal, Defendants focus solely on the question of whether they had reasonable suspicion to investigate Plaintiff for vandalism.[4] They contend the district court relied on inapposite cases in reaching its decision and erred by not

---

[4] Oddly enough, Defendants on appeal do not address probable cause for the arrest, even though they argued to the district court Plaintiff's flight provided probable cause to arrest Plaintiff. Presumably, Defendants believe if we reverse the district court's reasonable suspicion determination, probable cause would have existed to justify an arrest pursuant to N.M. Stat. Ann. § 30-22-1(B) based on Plaintiff's alleged flight. The district court, however made no determination as to whether Plaintiff attempted to flee or evade Defendants.

examining Plaintiff's alleged flight and evasion in conducting its reasonable suspicion analysis. Moreover, Defendants posit Diaz's tip—that a Hispanic male in Apartment 17 was in the parking lot at the time of a specific crime—provided the officers with reasonable suspicion because Diaz's tip was spatially specific, correct in identifying the race of Plaintiff, and non-anonymous. Defendants further argue the district court's result provides police no recourse to interview a potential suspect to a crime. Finally, Defendants believe the district court misapplied circuit precedent in concluding it could not conduct an independent inquiry for Plaintiff's excessive force claim.

Plaintiff, on the other hand, maintains the district court correctly held Defendants lacked reasonable suspicion to initiate a stop of Plaintiff. Plaintiff contends whether Diaz's tip was anonymous does not impact our analysis. Rather, he suggests the "bottom line" is that law enforcement knew only a Hispanic male was near the scene of an alleged car vandalism. Plaintiff does not quarrel with the proposition that a person's geographical and temporal proximity to a crime, taken together with other factors, may give rise to reasonable suspicion. But he argues his race, apart from any other information known to Defendants, clearly could not create reasonable suspicion. Plaintiff further argues we should not remand this case to the district court for an independent examination of Plaintiff's excessive force claim because the record clearly indicates the force used against Plaintiff was unreasonable under the circumstances. We first address whether Defendants are entitled to

8

qualified immunity on Plaintiff's unlawful arrest claim before proceeding to the issue of excessive force.

A.

The Supreme Court has granted us the latitude to address the two-part qualified immunity test in any order we choose. Pearson, 555 U.S. at 236. We begin with whether Defendants violated Plaintiff's federally protected right to be free from unlawful arrest.[5] An arrest, for purposes of the Fourth Amendment, is a seizure, which occurs "only when, by means of physical force or a show of authority, [an individual's] freedom of movement is restrained." Fogarty, 523 F.3d at 1155 (internal quotations omitted). In this case, Defendants do not dispute they arrested Plaintiff. Moreover, the district court, in reviewing the facts, stated Defendants took Plaintiff down and handcuffed him. Defendants did not have a warrant to arrest Plaintiff. "Their warrantless arrest of [Plaintiff] therefore violates the Fourth Amendment unless that arrest was supported by probable cause." Id. at 1156. In the qualified immunity context, we undertake "an independent and objective" evaluation of the existence of probable cause based upon the facts found by the district court, considering whether those facts "are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Id. (internal quotations omitted). Therefore, we must determine "which crime, or

---

[5] Plaintiff labeled his claim "Unreasonable Seizure." However, in that section of his Complaint, Plaintiff refers to the alleged unlawful or illegal "arrest."

crimes, defendants could objectively and reasonably have believed that [Plaintiff] committed." Id.

Viewing the facts in the light most favorable to Plaintiff, the district court indicated Defendants knew only two facts when they knocked on Plaintiff's door: "(1) a Hispanic male had been sighted in the vicinity of a vandalized car; and (2) that Hispanic male was, at the time the police arrived, located in Apartment No. 17." Aplt. App. at 111. Those facts certainly did not give rise to probable cause to arrest Plaintiff for the vandalism of Diaz's automobile. Defendants acknowledge this. Instead, Defendants argued to the district court they had reasonable suspicion to investigate Plaintiff for the vandalism and probable cause to arrest Plaintiff based on his flight.

1.

Defendants contended below that New Mexico's resisting, evading or obstructing an officer statute provided the authority to arrest Plaintiff for his alleged flight. N.M. Stat. Ann. § 30-22-1(B). But that statute applies only where law enforcement officers have reasonable suspicion or probable cause to apprehend or arrest a person *prior to* the flight. This rule derives from the statute's language that Plaintiff must have attempted to flee or evade *with the knowledge Defendants were attempting to apprehend or arrest Plaintiff.* New Mexico v. Gutierrez, 162 P.3d 156, 168 (N.M. 2007). The New Mexico Supreme Court has told us that "if a reasonable person would not have understood he was not free to leave, Defendant could not . . .

10

be punished for evading and eluding an officer simply because he exercised his constitutional right to walk away from the officer and end the encounter." Id. At a minimum, an officer's intention to initiate an investigatory detention supported by reasonable suspicion followed by the suspect's flight is necessary to justify an arrest under the New Mexico statute: "[A] person who walks away from an officer attempting to detain that person based on reasonable suspicion can be charged with evading and eluding an officer under Section 30-22-1(B)." Id. at 167. Therefore, to discern whether Defendants had probable cause to arrest Plaintiff for flight under the New Mexico statute, we must determine whether Defendants had any grounds for reasonable suspicion prior to Plaintiff's alleged flight. Accordingly, we turn to the question of whether Defendants had reasonable suspicion to detain Plaintiff for the vandalism of Diaz's automobile.

2.

An investigative detention is a "Fourth Amendment seizure[] of limited scope and duration requiring reasonable suspicion of criminal activity." Lundstrom v. Romero, 616 F.3d 1108, 1120 (10th Cir. 2010). "An officer who 'stops' and briefly detains a person for questioning 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). Reasonable suspicion does not rise to the level of probable cause, but "it does demand something more than an inchoate

11

and unparticularized suspicion or hunch." Id. (internal quotations omitted).

In determining Defendants lacked reasonable suspicion to detain Plaintiff, the district court relied on our holding in United States v. Davis, 94 F.3d 1465 (10th Cir. 1996) to conclude reasonable suspicion does not arise when an officer knows only a man was in a parking lot at the time of a vandalism. In Davis, law enforcement officers in a marked police car observed an automobile with four occupants parked just north of a "juice joint," a business that sells liquor without a license. Id. at 1467. Davis exited his car and made eye contact with a law enforcement officer, broke eye contact, and then began walking toward the juice joint with his hands in his pockets. Id. The law enforcement officer knew Davis was an ex-convict who had been acquitted of a gang-related homicide and that Davis was associated with a gang. Id. The officer also had received information Davis had been selling narcotics. Id. But none of the officer's prior contact with criminal activity in the area of the juice joint had involved Davis. Id. We held none of these factors, standing alone or taken together, provided the officer with "a particularized and objective basis for suspecting the person stopped of criminal activity." Id. at 1468 (internal quotations omitted).

Defendants suggest our holding in Davis is distinguishable. In support, Defendants argue the law enforcement officers in Davis were not investigating a specific crime and did not have a non-anonymous tip. Defendants believe our holding in United States v. Sanchez, 519 F.3d 1208 (10th Cir. 2008), is on point. In

12

Sanchez, a woman driving a van flagged down two law enforcement officers. Id. at 1211. The woman "was very excited" and told the officers she had seen a man in a gray shirt striking a woman in the face at a nearby intersection. Id. The officers immediately drove to the intersection, which was one block away. Id. They observed a blue sedan and a white van pulling away quickly from a house. Id. Neighbors at the scene were pointing to the two vehicles "as if to say 'that's them.'" Id. Even though the tip was anonymous, we held the officers had reasonable suspicion to stop the suspects who pulled away from the alleged scene of the crime. We reasoned that the tip was not overly general because the woman in the van described an aspect of the assailant's clothing and because her tip was spatially specific. Id. at 1214. We also concluded the fact the automobiles were speeding away while a number of people pointed to those vehicles was "significant." Id. at 1214–15.

Although neither Davis nor Sanchez is directly on point, we find Davis to be more analogous to the present case. In Sanchez, we had facts before us of: (1) a positive, direct identification of an assailant *committing* a crime; (2) two vehicles quickly departing from the crime scene; and (3) corroboration of the tip by identifiable neighbors pointing to the departing vehicles. We have none of those facts in the present case. Rather, here, Diaz did not observe Plaintiff committing any crime. Moreover, the record before us is not clear as to where Diaz saw Plaintiff in the parking lot in relation to Diaz's automobile. We agree with Defendants that our

13

holding in <u>Davis</u> did not foreclose an officer from developing reasonable suspicion based on the suspect's location at the scene of a crime. But Plaintiff's temporal and geographic proximity to the crime *alone* is not sufficient in this case to provide Defendants with reasonable suspicion.[6] "A police officer cannot legally detain a person simply because criminal activity is afoot. The particular person that is stopped must be suspected of criminal activity." <u>United States v. Fisher</u>, 597 F.3d 1156, 1158–59 (10th Cir. 2010).

3.

Here, Defendants did not have a particularized and objective basis to detain Plaintiff. This case involves the sole fact of a Hispanic male in a parking lot where an unwitnessed vandalism had occurred. The vandalism occurred during the day.

---

[6] Every case Defendants cite for their argument that being at the crime scene provides an officer with reasonable suspicion found temporal and geographic proximity to be one of several factors, which considered in the totality of the circumstances, provided the officers in those situations with reasonable suspicion. In <u>United States v. Brown</u>, 334 F.3d 1161, 1166–67 (D.C. Cir. 2003), the alleged crime occurred late at night in a high crime area where gunshots had been fired from one of two cars in a parking lot. Moreover, the suspect exited one of those cars, watched the officers, then disappeared down an alley. <u>Id.</u> In <u>United States v. Wimbush</u>, 337 F.3d 947, 950 (7th Cir. 2003), an officer halted a vehicle based on a general dispatch report. In addition to the report, the officer relied on the fact the defendant in that case was driving a purple sport utility vehicle with shiny rims, the same vehicle the suspect reportedly drove. <u>Id.</u> Moreover, the shooting at issue in that case occurred minutes earlier, just eight blocks away from the stop. <u>Id.</u> Finally, in <u>United States v. Raino</u>, 980 F.2d 1148, 1150 (8th Cir. 1992), the facts included shots fired late at night where the suspect's car was parked. At the scene, the suspect's car was double parked. <u>Id.</u> As the officers approached the vehicle, the suspect slowly pulled away and when the officer shined a spotlight on the suspect's face, he appeared to be nervous. <u>Id.</u>

According to the district court, Defendants relied on no factors other than Plaintiff's presence in the parking lot for their reasonable suspicion determination. Defendants argue the district court needed to look at more facts, specifically Plaintiff's "fleeing" and "evading." Defendants thus appear to misunderstand the district court's holding. The district court did not reach the issue of flight or evasion because that was the officers' stated reason for the *arrest* pursuant to the New Mexico statute. The district court said reasonable suspicion or probable cause must have existed for some separate offense. Even if Defendants do understand the district court's holding, but still believe the district court should have looked to flight and evasion in its reasonable suspicion analysis regardless, we must take *only* the facts the district court used in a light most favorable to Plaintiff. Medina, 252 F.3d at 1130. "When a defendant argues that a trial judge erred . . . because the judge was mistaken as to the facts that are subject to genuine dispute, the defendant's argument cannot be entertained under the collateral-order doctrine but must instead await an appeal at the conclusion of the case." Forbes, 313 F.3d at 147–48. Accordingly, we cannot consider flight or evasion in our reasonable suspicion analysis in this appeal.

Defendants also believe the fact the tip was non-anonymous weighs in their favor. But regardless of whether the tip was anonymous, the officers must have had more than a hunch. See Davis, 94 F.3d at 1468. A person of a particular race standing in a parking lot where a crime occurred is not enough to create reasonable suspicion. See Fisher, 597 F.3d at 1158–59. Here the district court did not have

15

facts before it of flight from the parking lot, nervous behavior, or any other factors, that if examined with the tip, would create reasonable suspicion under the totality of the circumstances. Accordingly, we hold Defendants lacked reasonable suspicion to detain Plaintiff in connection with the vandalism of Diaz's automobile.

Defendants believe our holding will "give the police no recourse to interview a potential suspect to a crime." In response to this argument, we need only to look to the Constitution. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A citizen has the constitutional right to walk away from a law enforcement officer who lacks probable cause or reasonable suspicion to detain or seize him or her. See Kentucky v. King, 131 S.Ct. 1849, 1862 (2011). The Supreme Court has told us that when law enforcement officers knock on a door without a search warrant and the occupant makes the decision to open the door and speak to the officers, the occupant "may refuse to answer any questions at any time." Id. This holding is unremarkable and certainly not novel. If the officers want to force a suspect to speak, they *must* have reasonable suspicion or probable cause. The Constitution mandates no less. Because we hold Defendants lacked reasonable suspicion to detain Plaintiff for the vandalism, Defendants lacked probable cause to arrest Plaintiff for flight or evasion under N.M. Stat. Ann. § 30-22-1(B), thereby violating Plaintiff's constitutional right to be free from unlawful

16

arrest.[7]

B.

Even though we hold Plaintiff has alleged a constitutional violation for unlawful arrest, Plaintiff still must show Defendants violated a clearly established constitutional right. Fogarty, 523 F.3d at 1158. "[F]or a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Cortez v. McCauley, 478 F.3d 1108, 1114–15 (10th Cir. 2007) (en banc). Even in novel factual circumstances, "officials can still be on notice that their conduct violates established law." Id. Our "relevant, dispositive inquiry" for this prong "is whether it would be clear to a reasonable officer that his conduct was unlawful." Fogarty, 523 F.3d at 1155 (internal quotations omitted). In other words, "the contours of the right" must be "sufficiently clear that a reasonable official" would understand that what he is doing violates that right. Dodds, 614 F.3d at 1206.

"In the context of an unlawful arrest our analysis is simple, for the law was

---

[7] Plaintiff argues "[d]ragging [Plaintiff] from the apartment, without a warrant or probable cause and exigent circumstances, clearly violated his Fourth Amendment protection under Payton v. New York", 445 U.S. 573 (1980). In Payton, the Supreme Court held law enforcement officers may not enter a home without consent to make a warrantless arrest even where probable cause exists, absent exigent circumstances. Id. at 576. Because Plaintiff raises this argument for the first time on appeal, we do not consider it and leave the argument for the district court to determine. Katz v. Gerardi, 655 F.3d 1212, 1217 n.3 (10th Cir. 2011).

and is unambiguous: a government official must have probable cause to arrest an individual." Fogarty, 523 F.3d at 1158–59 (internal quotations omitted). New Mexico Statute Annotated § 30-22-1(B) is equally unambiguous: an officer must have probable cause or reasonable suspicion of a crime *prior to* the flight in order to arrest a person for flight or evasion. Gutierrez, 162 P.3d at 166. Accordingly, "well-settled constitutional and state-law precedent would have put reasonable officers on notice that they lacked probable cause to effectuate an arrest." Fogarty, 523 F.3d at 1159.

IV.

Having determined the district court properly denied Defendants qualified immunity as to Plaintiff's unlawful arrest claim, we must now move to Plaintiff's excessive force claim. The district court did not decide the excessive force claim. Instead, the court interpreted our precedent to hold that the outcome of an excessive force claim depends on the outcome of an unlawful arrest claim. The court stated: "Because there is a dispute of material fact with regard to whether Plaintiff's arrest was lawful, the Court cannot evaluate whether the force used in connection with that arrest was excessive." Aplt. App. at 113–14. But this was a misreading of our case law.

We have held that where, as here, a case involves "claims of both unlawful arrest and excessive force arising from a single encounter," the district court must "consider both the justification the officers had for the arrest *and* the degree of force

18

they used to effect it." Cortez, 478 F.3d at 1127 (emphasis added). In Cortez, we emphasized the inquiries regarding unlawful arrest and excessive force are "separate and independent, though the evidence may overlap." Id. In application, a plaintiff may argue law enforcement officers unlawfully arrested him. If the plaintiff successfully proves his case, "he is entitled to damages for the unlawful arrest, which includes damages resulting from any force *reasonably* employed in effecting the arrest." Id. (emphasis added). If the plaintiff also alleges excessive force, the district court must conduct a separate and independent inquiry *regardless* of whether the plaintiff's unlawful arrest claim is successful. Id. And if the district court concludes the arrest was unlawful, the court *may not* automatically find any force used in effecting the unlawful arrest to be excessive. Instead, the district court must then analyze the excessive force inquiry under the assumption the arrest was lawful.[8] As we said in Cortez:

> [T]he excessive force inquiry evaluates the force used in a given arrest
> or detention against the force reasonably necessary to effect a lawful

---

[8] While this analysis may appear merely academic, the distinction is crucial. If a plaintiff pleads unlawful arrest, but fails to plead excessive force, he is entitled to *reasonable* damages from the unlawful arrest, but not damages from any excessive force employed. This is because the claims of unlawful arrest and excessive force are *separate* and *independent*. In the case before us, Plaintiff pled excessive force and unlawful arrest separately. Therefore, if Defendants' use of force in effecting Plaintiff's unlawful arrest is found to be reasonable, Plaintiff recovers his damages under his unlawful arrest claim. If Plaintiff proves Defendants' use of force in effecting Plaintiff's arrest was excessive, Plaintiff recovers damages for any excessive force *in addition to* the damages he received for the reasonable force employed in executing his unlawful arrest.

arrest or detention under the circumstances of the case. Thus, *in a case where police effect an arrest without probable cause* or a detention without reasonable suspicion, *but use no more force than would have been reasonably necessary if the arrest or the detention were warranted*, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.

Cortez, 478 F.3d at 1126 (emphasis added). If successful in proving his excessive force claim, the plaintiff "is entitled to damages resulting from that excessive force." Id. at 1127 Accordingly, "[t]he plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither." Id.

Plaintiff argues we should find excessive force and deny qualified immunity on that claim rather than remand to the district court for an independent examination of Plaintiff's excessive force claim. He relies on Swoboda v. Kubach, 992 F.2d 286 (10th Cir. 1993). In that case, we stated the well established rule that we may affirm the district court for reasons other than those relied on by the district court as long as those reasons find support in the record. Id. at 291. We do not believe that to be the appropriate course in this case. The district court stated Defendants were not entitled to qualified immunity on the excessive force claim. The court reached that conclusion by stating it *could not* evaluate whether the force used in connection with that arrest was excessive. Because the district court did not even evaluate whether the force was excessive, we vacate the denial of qualified immunity as to Plaintiff's excessive force claim and remand to the district court to evaluate the excessive force claim *separate* and *independent* from the unlawful arrest claim.

20

For the above stated reasons, the decision of the district court is—

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.