FILED
United States Court of Appeals
Tenth Circuit

April 25, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARIA ESPARZA,

      Plaintiff-Appellee,

v.

DOUGLAS BOWMAN,
in his individual capacity,

      Defendant-Appellant.

No. 12-2140
(D.C. No. 2:11-CV-00727-WJ-WPL)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **HOLLOWAY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

Maria Esparza brought this suit under 42 U.S.C. § 1983 against Douglas

Bowman, the Police Chief of Texico, New Mexico, alleging claims for unlawful and

retaliatory arrest.[1]  Chief Bowman moved for summary judgment based on qualified

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    The complaint also alleged a malicious prosecution claim that has since been
dismissed and is not the subject of this appeal.

immunity, but the district court denied his request. Now in this limited interlocutory appeal, Chief Bowman contends the district court erred in denying his motion for summary judgment on qualified immunity grounds. We affirm.

## I. Background[2]

At 2:18 pm on August 16, 2008, an anonymous caller reported a possible fight at 323 State Street in Texico, New Mexico. Sixty seconds later, Chief Bowman arrived on scene and observed 72-year old Maria Esparza yelling at a group of men as she walked to her car. This was not the first time Chief Bowman had met Mrs. Esparza. She had previously called city hall because children were throwing firecrackers at her dogs. Chief Bowman responded to that call but instead of investigating her complaint he lectured her for letting her dogs run loose. This compelled Mrs. Esparza to complain to the mayor, but after a city council meeting at which the matter was discussed, no action was taken against Chief Bowman. Chief Bowman was aware of the complaint, however, and later, Mrs. Esparza saw Chief Bowman pointing out her house to another officer. She reported this conduct to the mayor as well, but again, no action was taken against Chief Bowman.

On the afternoon of August 16, Chief Bowman arrived at the scene and shouted to Mrs. Esparza as she walked to her car that he needed to talk with her and would get a warrant for her arrest if she left. He approached Mrs. Esparza's car as

---

[2]    We view the facts in the light most favorable to the non-moving party, Mrs. Esparza. *See Storey v. Taylor*, 696 F.3d 987, 990 n.1 (10th Cir. 2012).

- 2 -

she entered it, while Mrs. Esparza's daughter, who is afflicted with cerebral palsy, was sitting in the back seat. Chief Bowman tapped on the window as he repeatedly told Mrs. Esparza that he needed to speak with her and would arrest her if she left. At one point, he opened the car door, still insisting that he needed to speak with her, although he did not explain why or specifically order her to remain on the premises. Mrs. Esparza, who was somewhat confused by the situation, understood what Chief Bowman was saying but not what he wanted or why he was yelling. And because both she and her daughter were frightened by Chief Bowman, she pulled the door shut and drove away without agreeing to speak to him.

After Mrs. Esparza left, Chief Bowman spoke with the other individuals at the scene, who happened to be Mrs. Esparza's family members, and concluded there was insufficient evidence to arrest anyone for fighting. Meanwhile, Mrs. Esparza went to her home nearby and called the police. She told the police dispatcher that she had spoken with an officer but did not understand what he wanted. She also asked if he could arrest her. Officer Gilbert Salguero responded to Mrs. Esparza's home, where she repeated that Chief Bowman had been yelling at her and she called the police because she did not understand why.

Two days after the incident, on August 18, 2008, Chief Bowman signed a warrant affidavit for Mrs. Esparza's arrest. According to the affidavit, Mrs. Esparza had violated N.M. Stat. Ann. § 30-22-1 because she could have been a witness to a potential fight reported on August 16. The affidavit was approved, a warrant was

- 3 -

issued, and Mrs. Esparza was arrested by Officer Salguero the same day. Thereafter, Mrs. Esparza complained again to the mayor about Chief Bowman, but she abandoned her complaint due to the pending criminal charges.

Mrs. Esparza was eventually tried and convicted by a jury in state magistrate court. *See* Aplt. App. at 59. She subsequently pursued a de novo trial in state district court, but her attorney apparently entered a guilty plea on her behalf. Mrs. Esparza then obtained new counsel and moved to withdraw her plea on the ground that it was not made knowingly and voluntarily. *Id.* at 61-63. There are some gaps in the procedural record after that point, but the New Mexico Court of Appeals later set aside her conviction, presumably because Mrs. Esparza had not been afforded the proper procedural safeguards attending her guilty plea (entered by her former attorney) under N.M. Rule Crim. P. 5-303(F). *See* Aplt. App. at 64-65. When the prosecutor subsequently dismissed the charges, Mrs. Esparza filed this suit.

## II. Analysis

We begin with the relevant legal standards. "[W]e have interlocutory jurisdiction over denials of qualified immunity at the summary judgment stage to the extent that they turn on an issue of law." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1276 (10th Cir. 2008) (brackets and internal quotations marks omitted). This means we accept the facts as the district court assumed them to be in denying summary judgment. *Romero v. Story*, 672 F.3d 880, 882-83 (10th Cir. 2012). Although we may consider "whether the set of facts identified by the district court is

sufficient to establish a violation of clearly established constitutional right, . . . we may not consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Id.* (internal quotation marks omitted). "Within this limited jurisdiction, we review de novo the district court's denial of a summary judgment motion asserting qualified immunity." *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010) (brackets and internal quotation marks omitted).

Our review of summary judgment orders based on qualified immunity differs from other summary judgment decisions. *Buck*, 549 F.3d 1277. "At this stage, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Storey v. Taylor*, 696 F.3d 987, 992 (10th Cir. 2012) (internal quotation marks omitted). When a defendant raises a qualified immunity defense, the burden falls on the plaintiff to show, "on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010). We have discretion to decide which of these two prongs to consider first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In analyzing the former, we ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008) (internal quotation marks omitted). As to the latter, we determine "whether a right was clearly established [by] look[ing]

- 5 -

for Supreme Court or Tenth Circuit precedent on point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains." *Lundstrom,* 616 F.3d at 1119. Mrs. Esparza cannot simply "identify in the abstract a clearly established right and allege that the defendant has violated it." *Id.* (internal quotation marks omitted). Rather, she "must show legal authority making it apparent that in light of pre-existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue." *Id.* (internal quotation marks omitted). With these principles in mind, we now consider her claims.

A. Unlawful Detention/False Arrest

1. Constitutional Violation

Mrs. Esparza first contends Chief Bowman violated her Fourth and Fourteenth Amendment rights to be free from unlawful detention and arrest. Although Chief Bowman did not actually arrest her, there is no question he caused her arrest. *See Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (requiring a causal link between the defendant and the constitutional violation). Thus, we ask whether he had probable cause to pursue her arrest for violating N.M. Stat. Ann. § 30-22-1, which criminalizes "intentionally fleeing, attempting to evade or evading an officer of [New Mexico] when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him." To have probable cause to arrest under § 30-22-1, an officer must have a reasonable suspicion that the person committed a crime, justifying an investigatory stop, and the

- 6 -

officer must have a reasonable belief that the person knew the officer was trying to apprehend him or her. *See State v. Gutierrez*, 162 P.3d 156, 167 (N.M. 2007). Of course, there must also be proof that the person fled, but that is not in dispute here.

Initially, the district court concluded that Chief Bowman's conduct was sufficient to alert Mrs. Esparza that she was not free to leave. We agree. As soon as Chief Bowman arrived, he repeatedly shouted to Mrs. Esparza that he needed to speak with her, she should respect him, and he would obtain a warrant if she fled. Although he never explicitly ordered her not to leave, this conduct certainly signaled that she was not free to go. Thus, these facts found by the district court establish that Chief Bowman reasonably believed Mrs. Esparza knew he was trying to detain her.

Nevertheless, none of the undisputed evidence submitted thus far indicates that Chief Bowman had a reasonable suspicion to detain Mrs. Esparza in the first place. An officer may conduct a brief investigatory stop if there is a reasonable, "articulable suspicion that a person has committed or is about to commit a crime." *Florida v. Royer*, 460 U.S. 491, 498 (1983). When discerning whether a reasonable suspicion exists, we consider the totality of circumstances and "defer to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." *United States v. Sanchez*, 519 F.3d 1208, 1215 (10th Cir. 2008) (internal quotation marks omitted). But an officer must rely on "more than an inchoate and unparticularized suspicion or hunch." *Romero*, 672 F.3d at 886 (internal quotation marks omitted).

In the district court, Chief Bowman argued that he had a reasonable suspicion to detain Mrs. Esparza because she was at the scene of a public disturbance. The district court surmised that the crime Chief Bowman was purportedly investigating was disorderly conduct, N.M. Stat. Ann. § 30-20-1(A), which proscribes "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace." The district court acknowledged that Mrs. Esparza was yelling at her male family members when Chief Bowman arrived, but it also recognized there was no indication this 72-year old woman's yelling was unreasonably loud. Nor was there any indication that she had been in a fist fight. Indeed, as the court observed, Chief Bowman had no knowledge that Mrs. Esparza's conduct was violent, likely to produce violence, or otherwise tended to disturb the peace. *See Buck*, 549 F.3d at 1284 (applying New Mexico law and explaining that disorderly conduct must fall within a statutorily enumerated category of proscribed behavior and have a potential effect on others that tends to disturb the peace). Instead, he knew only that an anonymous caller had reported a potential fight, with no suggestion that Mrs. Esparza had participated in a fight. *See Sanchez*, 519 F.3d at 1213-14 (discussing reliability concerns of uncorroborated anonymous calls). And on the warrant affidavit, he alleged only that she could have been a potential witness. None of these facts found by the district court suggest that Mrs. Esparza was engaged in disorderly conduct. Chief Bowman insists that her presence at the scene did not foreclose him from developing a reasonable suspicion, *see Romero*, 672 F.3d at 887

- 8 -

& n.6 (observing that a suspect's temporal and spatial proximity to a crime scene, coupled with other factors, may provide officers with a reasonable suspicion), but our obligation at this point is to view the facts found by the district court in the light most favorable to Mrs. Esparza. Viewed this way, we agree that the evidence presented on summary judgment does not evince a reasonable suspicion justifying an investigatory stop.[3] Consequently, Mrs. Esparza has satisfied her burden at this stage of the proceedings to show that Chief Bowman lacked probable cause to have her arrested under § 30-22-1.

2. Right Clearly Established

We turn then to whether Mrs. Esparza's rights were clearly established at the time of the alleged violation. There can be no dispute that probable cause is required to justify an arrest. *Romero*, 672 F.3d at 885. Still, Chief Bowman contends that *Romero* is not proper authority for defining the contours of clearly established law in this case because it was decided after the events in question. He also contends it is improper to rely on *Gutierrez* because that case involved distinguishable facts and

---

[3] Chief Bowman contends that the district court erred in restricting its analysis to disorderly conduct. He says the court also should have considered whether he had a reasonable suspicion to detain Mrs. Esparza for battery, attempted battery, unlawful threatening or menacing, and assault. In fact, Chief Bowman argues that the facts known to a reasonably objective officer in his position would have provided probable cause to arrest Mrs. "Esparza for *any* crime with which she could have been charged." Aplt. Br. at 16. We do not consider these alternative justifications for her arrest, however, because none were advanced in the district court and as a result, we have no way of knowing whether they present genuine issues of material fact to which we would be bound in this interlocutory appeal. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1156 n.8 (10th Cir. 2008).

crimes.  We disagree on both counts.  It was clearly established even before *Romero* that an arrest must be supported by probable cause.  *See Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).  And while *Gutierrez* may differ on the facts and underlying crimes, it clearly established that an officer must have a reasonable suspicion of an underlying offense to effectuate an arrest pursuant to § 30-22-1.  162 P.3d at 167.  Thus, based on the evidence presented to the district court on summary judgment, Mrs. Esparza has satisfied her burden to show a violation of her clearly established rights.

    B.  First Amendment

        1.  Constitutional Violation

Mrs. Esparza also claims Chief Bowman violated her First Amendment rights by arresting her in retaliation for her complaints to city officials.  To establish a constitutional violation, Mrs. Esparza must demonstrate

> (1) that she was engaged in a constitutionally protected activity;
> (2) that a defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to her exercise of her First Amendment speech rights.

*Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).  "She must also plead and prove the absence of probable cause," *id.*, but that showing has already been made.[4]

---

[4]     In *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006), the Supreme Court held that retaliatory prosecution plaintiffs must plead and prove the absence of probable cause as an element of their case.  The Court explained that retaliatory prosecution

(continued)

Mrs. Esparza first engaged in protected activity when she publicly complained about Chief Bowman at a July 22, 2008 city council meeting. Chief Bowman attended that meeting after learning of the complaint from the mayor. Then, just before the August 16 incident, Mrs. Esparza lodged another complaint with the mayor because she had seen Chief Bowman pointing out her home to another officer. These complaints constitute protected activity under the First Amendment. *See City of Houston v. Hill*, 482 U.S. 451, 461 (1987) ("The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Additionally, it is clear that Chief Bowman's pursuit of an arrest without probable

---

claims are generally directed against the officer who induced the prosecution because the prosecutor enjoys absolute immunity from liability. *Id.* at 262-63. And since the causal connection is "between the retaliatory animus of one person and the action of another," *id.* at 262, the no-probable-cause requirement is necessary "to prove a chain of causation from animus to injury," *id.* at 259.

Here, Chief Bowman invokes *Hartman* and says Mrs. Esparza must show not only a lack of probable cause, which she has done, but also other evidence linking his retaliatory animus to the officials who approved the warrant and subsequently prosecuted her. *Hartman* held, however, that the "connection[] to be alleged and shown" to "link the allegedly retaliatory official to a prosecutor whose action has injured the plaintiff . . . is the absence of probable cause." *Id.* at 263. Mrs. Esparza has already made that showing. To the extent Chief Bowman insists there was insufficient evidence to overcome the "presumption of regularity" that attached to the warrant application process, *see id.*, the district court evaluated evidence that during Chief Bowman's lengthy tenure in law enforcement, no county magistrate judge had ever rejected a warrant application and only once did a deputy district attorney ever require a warrant application to be modified. *See id.* at 264 (explaining that complex causation might be shown other ways, including through "evidence that a prosecutor was nothing but a rubber stamp for his investigative staff or the police"). Taking these facts in the light most favorable to Mrs. Esparza, we think she has satisfied the element of causation.

- 11 -

cause would chill a person of ordinary firmness from continuing to engage in protected activity. *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Thus, we must consider whether Mrs. Esparza has shown that Chief Bowman was substantially motivated by her complaints.

The district court concluded that the close temporal proximity between Mrs. Esparza's complaints and arrest, coupled with the absence of probable cause, supported a strong inference that Chief Bowman was motivated by the complaints. We agree. Shortly after their initial run-in, Mrs. Esparza complained to the city council, only to later discover Chief Bowman pointing out her home to another officer. Viewed in the light most favorable to her, this tends to suggest a retaliatory motive. This inference was reinforced by Mrs. Esparza's arrest without probable cause, which closely followed her second complaint to the mayor. Because the proximity of these events suggests a retaliatory motive towards Mrs. Esparza's protected activity, she has successfully alleged a constitutional violation.

2. Right Clearly Established

Nevertheless, Chief Bowman remains entitled to qualified immunity unless Mrs. Esparza can show that her First Amendment right to be free from retaliatory arrest was clearly established at the time of her arrest. We conclude she has. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462-63. Indeed, there can be no doubt

that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Consequently, accepting the facts as found by the district court on summary judgment, Mrs. Esparza has submitted sufficient evidence to overcome Chief Bowman's assertion of qualified immunity. Based on the evidence submitted thus far, we conclude that Mrs. Esparza has satisfied her burden to allege a violation of her clearly established right to be free from retaliatory arrest.[5]

The district court's judgment is affirmed.

Entered for the Court

Mary Beck Briscoe
Chief Judge

---

[5] The Supreme Court's decision in *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012) does not alter our analysis because the evidence before the district court was sufficient to show that Mrs. Esparza's arrest was not otherwise supported by probable cause.